646     KENTUCKY REPORTS.   [VOL. LXXXI.

Cromie v. Bull, &c.; M. A. Bull v. Cromie; Snively v. The Same.

CASE 105—TRUSTS AND TRUSTEES—MARCH 6, 1884.

# Cromie, Trustee, v. Bull, &c.
# M. A. Bull v. Cromie, Trustee.
# Snively v. The Same.

### APPEAL FROM THE LOUISVILLE CHANCERY COURT.

1. Courts of equity have the power, and will interfere to prevent the improper exercise of a discretionary power conferred by will or deed.
2. When the trustee acts fraudulently, or abuses the power confided to his discretion by refusing to exercise the trust, or if, in the attempt to exercise it, he does that which is unreasonable, the chancellor will, at the instance of the parties in interest, interfere for the preservation of the trust estate, and compel the trustee to discharge his duty.
3. It is difficult, if not impossible, to create a trust where the trustee has such unbounded power over the estate as to preclude a court of equity from controlling his action when his conduct indicates a palpable abuse of his power.
4. Under the testator's will the trustee may invest a part of the income of one of the children (*cestui que* trusts), and pay over the entire income to the others, the investment being made to secure the child entitled to it to the income of the investment during life, with remainder to his or her children.
5. Under the will the discretion of the trustee will not be questioned or controlled, except for bad faith or for an abuse of his trust.
6. In making investments the trustee must exercise care and prudence, and he must look to the solvency of the securities in which he invests. If having exercised a sound discretion, he makes an investment in good faith, and the security is lost without any neglect on his part, the loss is not his, but that of the estate.

GEO. B. EASTIN AND RUSSELL & BARRETT FOR APPELLANT.

WM. CROMIE FOR MARY BULL, ELLA S. SEVIER, AND JOHN SEVIER.

So long as the trustee, under the will of the decedent, acts in good faith and without fraud, he has the right, in his own discretion, to distribute the whole or a part of each child's portion of the fund, and his discretion, so exercised, can not be questioned or controlled by any court.

The jurisdiction of the court over the discretion of the trustee, so long as there is no fraud, is wholly excluded. (Perry on Trusts, vol. 2, sec. 511; *Ib.*, secs. 508, 511; Hill on Trustees, 488, 490, 495.)

The English cases only require an honest exercise of discretion on the part of the trustee to exclude the control of the court. (6 Hare, 410; D

Cromie v. Bull, &c.;  M. A. Bull v. Cromie;  Snively v. The Same.

Kay & Johnson, 603; 4 *Ib.*, 199; 11 Jurist N. S., 483; 3 Madd., 402; 5 *Ib.*, 426; Perry on Trusts, sec. 508; 21 Conn., 2; 3 H. L. cases, 195, 224; 125 Mass., 410; 25 Miss., 422; 20 Peck, 116; 9 *Ib.*, 461; Clark v. Anderson, 10 Bush, 99.)

ED. W. C. HUMPHREY, GUARDIAN *ad litem* FOR APPELLANT, ELLA BULL SNIVELY, AND JOHN B. BASKIN, GUARDIAN *ad litem* FOR MARY C. HENRIETTA AND JOHN BULL.

If the administration of a trust is brought within the jurisdiction of the court, a discretionary power may be required under the eye and direction of the court. (2 Perry on Trusts, sec. 511; 6 Hare, 410; 4 Eq., 661; 31 Beavan, 333; 1 L. R. App. cases, 428.)

Courts can interfere by injunction, and prevent an abusive, fraudulent, or collusive or other improper exercise of a discretionary power. (2 Perry on Trusts, sec. 511; Berry v. Hamilton, 10 B. Mon., 135; Bohon v. Barrett, 79 Ky., 378; L. R., 7 Ch'y, 754; L. R., 4 Eq., 661; 3 Stockton, 290; 2 Redfield on Wills, 411.)

Courts of equity will not permit a trustee, though invested with power absolute in terms, to exercise that power so as to defeat a clear and well-defined trust. (Bohon v. Barrett, 79 Ky., 378; 3 Stockton, 290; 2 *Ib.*, 305; Hill Trustees, 70, 491; 10 B. Mon., 129; 10 Eq., 26; 17 *Ib.*, 24; 7 Vesey, Jr., 486; 11 Foster, 352; 1 Dev. & Battle, 397.)

The intention of the testator must govern, and must be carried into effect, though it may defeat a particular intent. (1 Tudor & White Lead Co., Eq., 599; 21 Me., 288; 2 Stockton Ch., 305.)

When a trust has been created for the benefit of certain persons for life, with remainder over to others who are infants, the most absolute discretion in the matter of investments must be exercised under the eye of the court. (L. R., 10 Eq., 26; 7 *Ib.*, 26; 7 Vesey, Jr., 486; 34 Penn. St., 112; 11 Foster, 352.) ·

The rule in England and Kentucky is that trustees must invest in real or government securities. (2 Pomeroy Eq., secs. 1073-4; 2 Leading Case Eq., 1800, 1802; Smith v. Smith, 7 J. J. Mar., 238; Clark v. Anderson, 13 Bush, 111; Gen. Stat., ch. 48, art. 2, sec. 19.)

JAS. HARLAN FOR EDWARD BULL.

It was not the intention of the testator to put his children in close wardship, on short allowance, with the result of accumulating a large estate for the benefit of grand-children, none of whom were in existence when the will was made.

It was certainly not intended by the testator that the discretion vested in the trustee should be controlled by the court.

It was given to the trustee to determine, by the exercise of his own judgment, whether the person to whom he paid money had capacity to transact business, or whether the necessity existed to aid him. The words, "this discretion ought not to be controlled," were intended to apply to the discretion to pay the children.

The trustee is to exercise his opinion and judgment as to the existence of a necessity, or the capacity to handle the money in business. (Perry on Trusts, secs. 507, 510; Hill Trustees, 711, 488, 495.)

BROWN & DAVIE FOR EDWARD BULL AND ROBERT BULL.

By the 15th clause of the will there are several alternative courses open to the trustee:

1. To pay over, in his discretion, to any of the testator's children, the whole or a part of their portion, as to him may seem proper.

2. He may invest the property in real estate, to be held upon the trusts declared in clause 10—that is, the annual income to the children, the remainder infer to the grand-children, the whole charged with the wife annuity.

He may use the profits in improving real estate held under the will, or he may invest the profits that to him may seem best.

YOUNG & TRABUE FOR JOHN SNIVELY.

The allowances made to the guardians *ad litem* are too much. They set precedents which breed litigation without end. The United States supreme court, in Trustees v. Greenough (105 M. S.), rehearsed similar evils attending the allowance of such fees.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

John Bull, of Louisville, died some years since, leaving surviving him his widow and four infant children. He was the owner of a large estate, including real estate and personalty, all of which he disposed of by a last will and testament that was, after his death, admitted to probate in the Jefferson county court. He left his widow an annuity of twelve thousand dollars, and gave to his children, with certain limitations and restrictions, the balance of his estate. At the time of his death, and for years prior thereto, he was engaged in the business of making and selling patent medicines, and by certain provisions of his will empowered his executor, or his successor, to continue this business for the benefit of his estate; and from a clause of the will relating to the income arising from the patent medicine business springs the questions that are made prominent by this appeal.

By the 2d clause of the will he devises to his executor,

Thomas L. Jefferson, for and upon the trusts thereafter named, all of his estate, real, personal, and mixed.

By the 3d clause he devises to his executor, in trust for his son Edward during his life, certain real estate, the executor to pay over to him, in quarterly payments, the net proceeds of the rents and profits. At the death of Edward the unexpended rents and profits, and the estate devised to him is to pass to his descendants.

By subsequent clauses of the will he places similar limitations and restrictions on the property devised to his other children. Clause 10 provides: "All the balance of my estate, real, personal, and mixed, subject to the charge made in the 9th clause (which is a charge for the benefit of his wife, securing her the annuity) hereof, and all the accumulations thereof, as hereinafter provided for, are to be held undivided by my said executor in trust for my four children above named, upon the same conditions and uses set forth in the 3d clause hereof, and with like restrictions upon alienation and incumbrance, and with each and every part of said clause applying thereto as fully as if the same was here fully repeated and set forth, and so far as my two daughters are concerned, with further like restrictions," &c.

The children are to hold this residuary estate "in precisely the same manner, and for the same uses and trusts, as they hold the property specifically devised to them herein before, and that my said four children shall have the same, and no other rights in and powers over their respective interests in the residuary than they have over the property specifically devised to them in trust." The meaning of this is, that in the 3d clause he had given the estate specially devised to Edward for life, remainder to his descendants, and as to the residuary, the trustee was to hold it for his

children in the same manner.    His.entire estate was devised.
in trust to his children for life, remainder to their descend--
ants, and, if none, to the survivors, &c.   The children were
entitled to the income to be paid them by the trustee, and.
no more.

In the 15th clause of the will, the testator having re-
quired his executor to continue the business of making and
selling his medicines, undertakes to direct him as to the dis-
position he is to make of the profits.

The income arising from these medicines amounted to
sixty or seventy thousand dollars annually, and the intention
of the testator, or rather the extent of the power conferred
upon the executor in disposing of it to the children, is the
principal question involved in this controversy.

It is maintained by the guardian *ad litem* for the grand-
children of the testator that they have an interest in this in-
come, and the trustee has no power to give to their parents,
who are the children of the testator, more of the income
than their necessities demand, or that the chancellor, regard-
less of the question of *mala fides* on the part of the trustee,
has the power to say to the trustee, "You are giving to the
children more of the income than you should give, and I
therefore direct you to give a less sum."   The children, on
the other hand, maintain that in the absence of fraud or bad
faith on the part of the executor, the chancellor can not
control his discretion; that under the 15th clause the trustee
may give to each child his entire portion of the income, if
in his discretion he thinks the child should have it.   The
15th clause reads: "The profits arising from the business,.
and proceeds of any final sale of same (the patent medicines),.
shall form a trust fund in the hands of my executor, for the
use of my four children, and be held under the same trusts,.

and with like limitations and restrictions and charge in favor of my wife, as my real estate." This means that this fund. shall be subject to the payment of the widow's annuity as. the residuary estate is; in other words, the widow has a lien upon it for the amount to be paid her.

The testator then proceeds: "My executor may, in his. discretion, pay out of said profits as they accumulate, *to* *any of my children, the whole or a part of their portion of the* *same, as he shall deem proper, in view of their necessities or* *capacity to use the same advantageously in business;* or he may invest the same in real estate, to be held in like trusts,. and in all respects as the real estate herein devised in clause 10 hereof; or he may use the same in improving any real estate held under this will, or invest it in any other way that to him may seem best, and his discretion therein shall. not be questioned or controlled, but all such investments. shall be held under like trusts as the real estate herein devised. Any money paid to any of my children, under the power granted in this clause, must be paid to said child or children in person, and in no other way."

The executor, Thomas L. Jefferson, accepted the trust, but resigned his position in January, 1879, and, when this was done, the widow and children appeared in court and selected William Cromie, the present appellee, as provided by the 17th clause of the will.

The construction of the 15th clause of the will was made necessary by reason of the petition filed by the trustee for a settlement of his accounts, and the resistance of the grandchildren, those entitled in remainder, to certain acts of the trustee in the exercise of the powers conferred on him by this particular provision of that instrument.

The grand-children fear that the trustee may deprive them

652 KENTUCKY REPORTS. [VOL. LXXXI.

Cromie v. Bull, &c.; M. A. Bull v. Cromie; Snively v. The Same.

of any part of the income from this business of the manu-
facture and sale of the medicines, by giving to their parents
more of that income than their necessities require.

That courts of equity can and will interfere to prevent
the improper exercise of a discretionary power is a doctrine
well understood. Hence, if the trustee acts fraudulently, or
abuses the power confided to his discretion, by refusing to
execute the trust, or, in the attempt to exercise it, does
that which is unreasonable and calculated to defeat the pur-
pose of its creation, the chancellor will interfere, at the in-
stance of the parties in interest, for the preservation of the
trust estate, and will see that the trustee discharges his duties
as such. In the case of Bohon v. Barrett (79 Ky.) the
trustee declined to execute the trust, and the chancellor
said to him, ''You must execute it, although a discretionary
power was conferred.'' So, in the case before us, if Cromie
had, in the exercise of his discretion, declined to make any
advancements to these children out of the income, the chan-
cellor would have compelled him to have given them at least
so much of the fund as was necessary for their comfortable
support. It is difficult, in fact, to create a trust where the
trustee has such unlimited power over the trust property as
to preclude the chancellor from controlling his action, when
his conduct is such as to indicate a palpable or fraudulent
abuse of his power to the injury of the parties in interest.
To say that the chancellor had no control over such a fidu-
ciary would be to vest the trustee not only with the abso-
lute fee, but with the beneficial interest in the trust estate.
Conceding the doctrine to be as contended by counsel for
the appellee, and we see no reason to question its correct-
ness, still it can not be applied to the case before us. ''In
the nature of things,'' says Perry on Trusts, ''only very

general rules can be laid down upon a subject, when so much must depend upon the facts of each individual case," recognizing the general doctrine in regard to the power of courts. of equity over trustees and trust estates.   Has there been -such an abuse of power on the part of Cromie, or such an. arbitrary and unreasonable discharge of his duties as trustee,. as requires the chancellor to interfere in behalf of the grandchildren, who are the beneficiaries after the termination of the life estate of their parents?   In order to a correct determination of this question, it is not only proper, but necessary to ascertain what powers the testator intended to confer upon the executor and trustee.   He had secured by several provisions of his will a large and valuable real estate to his children for life, with remainder to their children, confining his own children to the income only so long as they lived. Those in remainder had been vested with an interest that neither their parents or the trustee could deprive them of, and in property of great value; and in disposing of the income upon the sale of his medicines, it is manifest that he intended it for the use of his children.   They were then, however, quite young, and the testator knew that the income was at that time more than sufficient to supply their wants, and therefore he selected his trusted friend, Thomas L. Jefferson, as the one who should stand in *loco parentis* and advance to them as their necessities demanded, with power to invest the remainder if he saw proper.   He was not only providing for the wants of the children during their minority, but he realized the fact that when of sufficient age and capacity to manage their own affairs they would require more of his estate, and he therefore vested the trustee with the power to pay out, at his discretion, *all* or any portion of the profits, as they accumulated, to his children, in view

of their necessities *or capacity to use the same advantageously in business.* "My executor may, in his discretion, pay out of said profits as they accumulate, to any of my children, *the whole or a part* of their portion of the same, as he shall deem proper, in view of their necessities or capacity to use the same advantageously in business." The executor is not confined to the advancement of such sums as would supply the children with the mere necessaries of life, but he is invested with plenary power to give to the children, as the parent could have done, any part or all of their portion of the income, in the event they manifested a *capacity* to take care of it, and of this the executor or trustee is made the sole judge. The only difference between the power conferred on the trustee and that belonging to the parent is, that the parent could have made the children the objects of his bounty, regardless of their necessities or conduct in life, while the trustee would be restrained from paying over to the children beyond what was necessary for their support and maintenance, if the child was so reckless in his habits and mode of living as to dispose of it in dissipation and extravagance as soon as it reached his hands. This provision was, in fact, intended more to restrain the child from engaging in the vices and extravagances of life than to restrain the trustee from paying the money to him. There is nothing in the record showing that the sons or daughters, or their husbands, were recklessly wasting their estate, or without capacity to manage it, or that the trustee has acted in bad faith, or has abused his trust.

The two sons had engaged in the manufacture of glass bottles, and were in a condition requiring the aid of the trustee from the means placed in his hands by the devisor for their benefit, and if the trustee had advanced the entire

income of each, it would have been in execution of the manifest purpose of the testator; or in the case of the purchase of a farm by one of the sons, and his inability to take up his notes or meet them at maturity, the trustee could have taken them up and charged the amount to the son, deducting it from the income to which he was entitled. The duty to do so, it is true, was not imperative, and the chancellor had no power to require the trustee to aid the son in this manner; but it would be a singular ruling to say that a trustee invested with such plenary power could not aid the beneficiary, merely because he had been unsuccessful in business, and leave him to struggle against the misfortunes of life without assistance; in order that a collossal fortune might be created for the grand-children, when it is manifest, in so far as the income of the estate is concerned, that his own children were the primary objects of his bounty.   A failure in business, by reason of reckless or dissipated habits, or the want of mind to conduct the ordinary business affairs of life, would justify the trustee in withholding such assistance, and, in fact, to do so under such circumstances would be in violation of the trust, and would authorize the parties in remainder to invoke the aid of the chancellor.   It is not necessary that the children of the testator should actually engage in business to justify the payment of this income by the trustee.   It is their capacity to take care of and manage it about which his discretion must be exercised.   The daughters may be able to manage their estate as well as the sons, and, even with imprudent husbands, to take care of and secure what is given them by the trustee, and with husbands who are business men, the greater the reason for aiding them.   All such matters are with the trustee, and when the money is paid over, in the

656          KENTUCKY REPORTS.     [VOL. LXXXI.

Cromie v. Bull, &c.; M. A. Bull v. Cromie; Snively v. The Same.

absence of bad faith on his part, those in remainder have no right to complain.   When the child is not capable of managing the income, the trustee may invest it in real estate or in the improvement of the real estate devised, or invest it in any other way, &c.; or even when the child is capable of managing his estate, the trustee can not be compelled to pay the whole of the income over to him.   It is still within his discretion.   When invested it passes to the remainder, subject to the life estate of the parent, as expressly provided by the 15th clause.

The question of more doubt than any other, suggesting itself to the mind of the court, arises as to the power of the trustee to withhold any part of the income by investing it in real estate, or any other property, when the child is capable of managing it himself.   There is an intention plainly expressed that the child should have the income; but when we consider the relation occupied by the trustee toward these children, and the broad and comprehensive power conferred, he stands in the place of the parent, with the power to say that a part of the income shall be invested in real estate or other property, with the limitation placed upon it by the devisor in the 10th clause of the will.   He may invest a part of the income of one of the children, and pay over the entire income to the others, the investment, of course, being made so as to secure the child entitled to it to the increase of the investment during life, remainder to his or her children.

The general doctrine is that "if trustees exercise their discretionary powers in good faith, and without fraud or collusion, the court can not revise or control their discretion."   (Perry on Trusts, sec. 511.)   There is less difficulty with counsel as to the law of this case than in its application

and in determining the extent of the power conferred. When the trustee is asked why he paid over to one of the children of the testator of the devisor the entire income from the patent medicines, his response is, "that the beneficiary, in his opinion, was capable of using it to his own advantage in his business affairs;" and this is a complete response to those in remainder, or to the chancellor, and nothing less than actual fraud, or bad faith, which is equivalent to fraud, will authorize the chancellor to control the trustee in his action, or take charge of the trust fund. His discretion, except for fraud, bad faith, or an abuse of the trust, shall not be questioned or controlled. To give the clause in controversy the construction placed upon it by counsel for the appellants, would make the children of the testator pensioners upon the bounty of the trustee for a mere subsistence, and create conflicting interests between them and their children never intended or contemplated by the devisor when disposing of this large estate, and the language of the 15th clause, creating the discretionary power, leaves the trustee uncontrolled in the exercise of a discretion that may prompt him to give to each of the children, when in his opinion they deserve it, the entire income arising from the manufacture and sale of the patent medicines. In determining the powers of the trustee, the right of the widow to her annuity must not be lost sight of, as the rights of the children are subordinate to her claim.

As to the remaining question made by counsel for the trustee on the appeal of the latter, with reference to the character of the investments authorized to be made, the construction already given as to the powers over the income determines, in effect, the extent of his power to make investments. It is maintained by counsel for the appellant

that the provision of the 15th clause of the will, as to investments, did not give to the trustee any greater power than he could have had in the absence of any discretion given him. In the present case there is a special direction as to the investments in real estate, with an unlimited power to the trustee to make them *in any other way that to him may seem best, and his discretion therein shall not be questioned or controlled;* and the power to invest in personal securities, it seems to us, necessarily follows from the clause of the will in question. That provision contains something more than a general power to invest at the discretion of the trustee. He may invest in real estate; he may improve real estate, *and make any other investment he sees proper, and shall not be controlled in his action.* In Brown v. French (125 Mass.) the trustees were "directed to use their own judgment as to investing the moneys arising from my estate. At the same time I would recommend to them the propriety of keeping at least one-half of the same invested in mortgages of unincumbered real estate, as I think well of that kind of security." The trustees made investments in bonds of a foreign railroad company, at less than par, and the court held that having been made in good faith, the trustees were not liable.

The English rule as to investments prevails in several of the States, and cases may be found somewhat analogous to this case, sustaining the judgment below, but no case has been referred to in which the trustee has been made liable with such a broad and uncontrolled power given by the will.

The testator confided the management of his entire estate to his executor, with a discretion as to investments that indicates clearly an intention on the part of the testator that this executor and trustee should manage and conduct his

estate as the testator himself could if he were living. We do not mean to adjudge that the trustee, in selecting the subject for his investments, must not exercise such care and prudence as to show that he was at least ordinarily diligent in making inquiry as to the solvency of the sureties in which he invested; but, on the contrary, this is required of him, as the discretion conferred does not authorize investments in stocks, choses in action, or other securities that are insecure, and when, by the exercise of ordinary diligence, the trustee could have discovered that fact before the investment was made. He must look to the solvency of the securities in which he proposes to place the trust funds. If he does this in good faith, and the security is lost without neglect on his part, it is the loss of the estate and not that of the trustee.

The judgments on the appeals of Mary A. Bull v. Cromie, trustee, and Ella B. Snively, guardian, v. same, are each affirmed. The judgment on the appeal of Cromie, trustee, v. Edward Bull and others, is reversed, and cause remanded for proceedings consistent with this opinion.