## James C. McFerran & Co. v. Fidelity Trust Co.

(Decided November 9, 1910.)

### Appeal from Jefferson Circuit Court
### (Chancery Branch, First Division).

1. Wills—Decedent's Estates—Control of Courts of Equity.—A court of equity will interfere at the instance of the parties in interest for the benefit of the estate of a decedent, and prevent the trustee from doing that which is calculated to defeat the purpose of the trust.

2. Same.—In construing a will, the whole will must be read together, and in construing the will in controversy two ideas stand out prominently: (1) the testator intended his estate to go to his own blood; (2) to make provision for his son, James, and James' children.

3. Same.—In the devise to his daughter, he is careful to provide that the estate shall return to his own blood in case either of them should die without issue or their children should die in infancy childless.

4. Same.—While the present wife of testator's son, James, may have a meritorious claim against her husband for alimony (they having separated), her claim is against her husband, and she cannot subject to it anything but his own property. Her husband may pay her out of what belongs to him, but he cannot pay her out of what belongs to his children.

5. Same.—While the testator intended to provide for his son, he plainly intended to protect his son's children against his son's improvidence.

D. L. THORNTON, T. K. HELM and HELM & HELM for appellant.

HUMPHREY & HUMPHREY, CHAS. H. SHIELD and BENJ. F. WASHER for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

The Fidelity Trust Company of Louisville is trustee under the will of James C. McFerrán, Sr., of a fund devised by the will to James C. McFerran, Jr., the son of the testator, and his children. This suit was filed by the trustee to obtain the direction of the chancellor as to the powers of the trustee under the will. The facts upon which the controversy turns are these: James C. McFerran died in 1885; his son, J. C. McFerran, Jr., at that time had separated from his wife, May Viley McFerran, and had two children. In the year 1887, he was di-

vorced from his wife, and she was given the custody of the children. Some years after that he married a second time, and this wife died childless. After this he married a third time, the third wife being Ella Weller McFerran. They lived together until about July, 1907, when they separated and she instituted a suit for divorce and alimony. After this suit was instituted a compromise was proposed by which the husband was to pay her $20,000 in settlement of the suit for alimony, and the husband applied to the trustee to furnish him $20,000 for this purpose. The trustee being in doubt as to its powers, asked the direction of the chancellor; and the two children of J. C. McFerran, Jr., by his first wife opposed the allowance. The circuit court sustained a demurrer to their answer, and adjudged the trustee to pay the $20,000 as requested by James C. McFerran. From this judgment his children have appealed.

The controversy turns upon the proper construction of the will of the grandfather which created the trust. The will is too long an instrument to be inserted here. By it the testator gave his wife the sum of $20,000 and some other personal property, empowering her to use it as she saw proper for her comfort and pleasure; but provided that whatever should remain at her death should be divided into four equal parts, and that one of them should be held for the benefit of his son James C. McFerran, Jr., and his children by their trustee upon the trusts declared in the eleventh item of the will. By the 5th item he devised a farm of two hundred acres to a trustee for the benefit of his son, "James C. McFerran, Jr., and his children," upon the trusts set out in item 11. By the seventh item of the will he provided that all of his estate not otherwise disposed of should be divided into four parts and that one of these parts should be held for the benefit of his son "James C. McFerran and his children" in trust under the limitations set out in the eleventh clause of the will. In the ninth item of his will he provided that if his daughter Catherine should die without issue, then one-third of her part of the estate should be held in trust for the benefit of his son James "and his children" as elsewhere in the will provided. The eleventh clause providing for the trust in favor of the son James and his children is as follows:

"All that portion of my estate which I have designated for the benefit of my son, James C. McFerran, Jr., and his children, that is to say, the special devise of the

Barren county land; the cash $6,500 in the 4th item mentioned; the one-fourth (¼) portion of my estate general; and the one-fourth (¼) portion of any residuum of his mother's devise remaining unused at her death, and all rights which would accrue to my son James or my children by reason of the dying out of any takers or taker of any devise or bequest under this will, I do hereby give and bequeath to and vest in my son John B. McFerran as trustee to have and to hold upon the following trust confidences and limitations, to-wit: He shall manage the land in person or by agent and shall invest the moneys of the trust. He may in his discretion pay out the income to James C. McFerran, Jr., or to the children of James C. McFerran, Jr., or in such ways or to such persons and in such sums as in his own judgment may be best for them, or he may if he think it best invest any part of the income so as to increase the fund. He shall not be compellable to pay any part of said trust estate or its income or increase to said James C. McFerran, Jr., or any child of his but shall see that they do not suffer want. He may employ James C. McFerran, Jr., in and about the management of said trust estate, and so long as James C. McFerran, Jr., is alive he shall settle only with him and settlements or acquittances made by James C. McFerran, Jr., with said estate shall be final and binding upon every one interested in said trust. If James C. McFerran, Jr., be employed about the trust estate, the trustee may pay him the entire income if he choose, but shall not be compellable so to do. He shall not pay out any part of said trust estate, or its income to the wife or widow of James C. McFerran, Jr. He may in his discretion pay out the entire income or any part thereof to James C. McFerran, Jr., upon his own receipt but shall not be compellable so to do. He may in his own discretion at any time pay over any or all of any portions of money of the trust whether principal, accumulations, income invested or uninvested to James C. McFerran, Jr., but shall not be compellable so to do. He may lease or sell any real estate of the trust in his discretion provided James C. McFerran concur and unite but he shall not be compellable so to do. My object being to secure said portion of my estate to my own blood, I have named my son, John B. McFerran, as trustee and given him the powers aforesaid. I have vested in him the largest and uncontrolled discretion and I insist that by discretion I mean his own uncontrolled notion and

conclusion of what he thinks best. This is all done after consultation with my son James C. McFerran, Jr., and his full approval. I do not reflect upon him in the least by this arrangement. I have confidence in his integrity, industry and economy, and this trust arrangement is for the best as I think, and as he agrees with me. There are imperative reasons why I feel it necessary to so dispose of such part of my estate, and they affect only myself and my family. If my son, John B. McFerran, by death, inability or refusal to act cease to be trustee of and for the trust in this item mentioned, then a new trustee shall be appointed who shall have and exercise all the powers and discretions herein accorded to John B. McFerran. Such appointment shall be made by joint writing and signatures of my sons John B. McFerran and James C. McFerran, Jr. If either be dead or incapacitated to sign, the survivor or one capacitated may make such appointment. If both be dead or incapacitated then such appointment shall be made in writing by my daughter, Catherine Davis. If my son, James C. McFerran, Jr., die leaving children surviving him, the trust estate as it exists at the time of his death shall be accumulated, under and subject to the discretion in the trustee to make advancements to such child or children until the youngest reaches the age of twenty-one years when it shall be equally divided to the then survivors and surviving children of any one then dead, such children to take the share which their parents would have taken had such parent survived, and should the said James C. McFerran, Jr., die leaving no issue surviving him then the trust property as then existing shall be paid over to and divided among my right heirs according to the laws of Kentucky regulating descent and distribution. The said trust estate shall not nor shall any increase, reinvestment or income thereof be liable for or subject to any debt, obligation, or liability of my son James C. McFerran, Jr., or any of his issue, and the trust powers and discretions are declared to be personally conferred and confided to John B. McFerran and his successor or successors, if any, nominated and appointed as hereinbefore provided for.''

The eleventh clause of the will must be read with its other provisions, for the intention of the testator is to be gathered from his whole will. When the whole will is read two ideas stand out prominently; first, the testator intended his estate to go to his own blood, and to

prevent its going to strangers; second, he intended to make a provision for his son, James, and his children. In the devises to his daughters he is careful to provide that the estate shall return to his own blood in case either of them die without issue, or their children die in infancy childless. There are two codicils to the will. In each of these he speaks of the trust for the benefit of his son James "and his children," and in the will and codicil he names this trust for the benefit of James "and his children" thirteen times. It is earnestly insisted that the provision in the eleventh clause that no part of the trust fund or its income is to be paid to the wife or widow of the son, refers to May Viley McFerran, who was then the wife of the son, and had separated from him. But there is nothing in the will to so limit the application of the words, and that the testator did not so intend is shown by the words, "My object being to secure said portion of my estate to my own blood." The testator thus shows that he had in mind excluding all persons from the enjoyment of any beneficial interest in the trust fund, except his son and his children. He did not intend it to go to strangers. The present wife of James C. McFerran may have a meritorious claim against him for alimony, but her claim is against her husband. She cannot subject to it anything but his property. The husband may pay her out of what belongs to him, but he cannot pay her out of what belongs to his children. While the testator intended to provide for his son, he plainly intended to protect his son's children against his improvidence and with this view, he expressly said: "The said trust estate shall not nor shall any increase, reinvestment or income thereof be liable for or subject to any debts, obligation or liability of my son James C. McFerran, Jr., or any of his issue." The claim of the wife for alimony is a liability of the son, James C. McFerran, Jr. It is true his obligation to his wife for alimony is of a high order, still the payment of this obligation out of the trust fund is no less forbidden by the will than the payment of other obligations of James C. McFerran, Jr. The trustee is given by the will a broad discretion; still it is not an arbitrary discretion, but is a sound discretion. The trustee must not violate the terms of the trust or so act as to defeat its purposes. A court of equity will interfere at the instance of the parties in interest for the benefit of the trust estate, and prevent the trustee from doing that which is calculated to defeat the purposes of the trust.

(Cromie v. Bull, 81 Ky. 646; Bohon v. Barrett, 79 Ky., 378; Perry on Trusts, Sec. 511a.)

After James C. McFerran, Jr., had been divorced from his first wife, and no allowance had been made her for alimony, the children applied to the court to make them an allowance for their support out of the trust fund while living with their mother. The chancellor sustained the application, and on appeal to this court the judgment was affirmed. The court after quoting the provisions of the will among other things, said:

"The testator evidently intended that the children of his son, James, should become the beneficiaries, in conjunction with their father, of the trust estate. In the seventh clause of his will he directs the fourth interests for the benefit of his son James and his children to be held in trust as in item eleven, already given; and while he designed that their father should have the larger part of the income, as he was the principal object of his bounty, he nevertheless intended to provide the children born and unborn against want, and this means an adequate sum out of the income for their support, maintenance and education. * * *

"The father may have other burdens upon him that would lessen the allowances to the children, and on the other hand the income of the trust fund may increase so as to require another application to the chancellor either to reduce or increase the allowance. The trust is of that character as brings the case within the power of the chancellor from time to time, that the trust fund may be applied as directed by the devisor." (Fidelity Trust and Safety Vault Co. v. McFerran, 14 R., 778, 780.)

Some years afterwards the father having married again a change was made in the allowance. (McFerran v. McFerran, 21 R. 252.) These opinions construing the will are conclusive upon the parties on two propositions: First, that the children of the son took an interest under the will in the trust fund; second, that the trustee may be controlled by the chancellor in the administration of the trust, and prevented from defeating the purposes of its creation. The precise question we have now was not before the court on either of these appeals, but taking the will as a whole, we have no doubt that the purposes of the testator would be defeated if the trust fund could be paid out by the trustee in satisfaction of the obligations of James C. McFerran; for in this way the estate would not be preserved to the blood of the testator as he in-

tended; and if the claims of the wife which are now as-
serted may be thus satisfied, there is no reason why any
other obligation of his may not be paid out of the corpus
of the fund. We do not mean that the wife is not en-
titled to an allowance for alimony; we only determine
that she must be paid out of her husband's interest in the
fund, and not out of the corpus of the fund.

Judgment reversed and cause remanded to the circuit
court, with directions to overrule the demurrer to the
answer of the children, and for further proceedings con-
sistent herewith.