Anderson, &c., v. Hall's adm'r, &c.   Crawford v. Same.

CASE 20—EQUITY—FEBRUARY 16, 1882.

# ˙Anderson, &c., v. Hall's adm'r, &c.
# Crawford v. Same.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. To properly construe a will is to ascertain the intention of the testator,. either from its express words, or the necessary inference resulting from their use. "I give to my wife all my property, real and per-- sonal, giving her the right to sell and reinvest, as she may desire,, any part of the same for her own separate use and benefit; and at her death the estate undisposed of to go to my three daughters," coupled with other provisions of the will, gives to the widow a life-- estate, with remainder to the three daughters, in the property not disposed of by her at her death.

JOHN C. WALKER FOR APPELLANT CRAWFORD.

It is clear that if Mrs. Hall had the absolute fee in the property devised,. and could vest a purchaser with the title, there could be no estate in remainder in the appellees. Therefore no estate in remainder passed to the appellees.

GOODLOE, ROBERTS & HUMPHREY FOR APPELLANTS.

We maintain that B. M. Hall, holding a fee-simple title to the estate devised, and having made an indefinite devise of it to his wife, the fee passed to her, and any subsequent instructions to her contained in the will, affecting her absolute power of disposition, are void, as. completely void as if the testator had devised the lands to his widow and her heirs, clogging the fee with conditions and limitations not sustained by the statute. (4 Leigh, 408; 4 Kent's Com., 270; Red-field, 2 vol., 659; 16 Johnson, 587; 21 Maine, 289; 52 N. H., 270;. Collins v. Carlisle, 7 B. Mon., 14; Carroll v. Carroll, 14 Ib., 637; 1 N. J., 136.)

CALDWELL & HARWOOD AND BEATTIE & WINCHESTER FOR· APPELLEES.

We contend that the testator intended to give to his wife a life-estate,. with power to sell and reinvest; but he imposed a trust˙ for the ben-- efit of her children in what should be undisposed˙ at her death. The words for her separate use and benefit are not intended to preclude the remaindermen, but to create a technical separate estate. (4 Peters, 86; Carroll v. Carroll, 12 B. Mon., 64; Collins v. Carlisle, 7 Ib., 14; Rev. Stat., vol. 2, 227; 2 Story's Equity, sec. 1384; Schouler's Domestic Relations, 195; Griffith v. Griffith, 5 B. Mon., 117; Brown v. Alden, 14 B. Mon., 150.)

.JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

Bartlett M. Hall died in the county of Shelby, leaving .surviving him his wife and several children. He had been twice married, but left no children by his last wife. He made and published his last will and testament as follows. By the first clause he directed the payment of his debts. The second clause provides: "I give and bequeath to my beloved wife, Mary F. Hall, all my property, including real and personal, of any and every description whatever, *giving her the right to sell and reinvest, as she may desire, any part of the same for her own separate use and benefit, and at her death, I desire that any portion of my estate remaining undisposed of shall go to my three daughters, Mary Davis, Annie Harbison, and Amelia Wilson.*"

The third clause provides: "I have given to my son, Wm. Hall, and my daughter, Valinda Nuckols, more than I am able to give the rest of my children; therefore I give nothing more to them."

And in the last clause he says: "I have given to Mary Davis and Annie Harbison more than I have given to my daughter, Amelia Wilson, *and after the death of my wife, Mary F. Hall,* I wish Amelia Wilson to first be made ·equal, and so with each of the other two, Mary Davis and Annie Harbison. I desire that they should come in for their proportion equally, after what they have already re-ceived be counted to them and taken into consideration, *my object being to let each of these three daughters, Mary, Annie, and Amelia, share alike, and get all my estate remaining after the death of my wife, and after each one of them have accounted for the portion already received,*" &c. He left his wife sole executrix, who qualified as such, and undertook the execution of the trust. The only estate of

much value left by the devisor was a tract of land in the county of Shelby, containing about one hundred and eighty acres. This farm was sold by the widow and executrix, and after applying the proceeds to the payment of the debts of her husband, she had remaining near $7,000. The widow owned no estate, so far as this record shows, except such as was derived under the will of her husband.

It appears from the record that this money she invested in notes upon D. A. Meriwether, and the latter becoming insolvent, his property was sold by an assignee, and the widow, for the purpose of saving the estate, or securing her investment, purchased the house and lot in controversy. Some of the purchase-money due by the widow remains unpaid, and constitutes a lien upon the property; also a mortgage lien of $800 due Mrs. Anderson. This was borrowed to pay on the property, and whether so or not, both the lien note for the purchase-money and the mortgage debt are to be satisfied as against these claimants.

The lot of ground purchased of the assignee of Meriwether by Mrs. Hall was at a cost of $3,000, of which sum she paid $1,000 in cash, and for the balance executed her notes. The widow died in July, 1879, leaving as her only heirs a sister and brother surviving, viz: John Crawford and Kate Anderson. This controversy is between the heirs of Mrs. Hall (the widow) and the children of B. F. Hall by his first wife, each claiming the lot of ground purchased by Mrs. Hall of Meriwether's assignee. The conveyance was made by the assignee to Mrs. Hall in her own right, and for the purchase-money unpaid she executed her individual notes, and as the proof conduces to show, borrowed of Kate Anderson the $800 secured by the mortgage to enable her to pay for the property. It is also, we think, well established

that all the payments made on the property, except the $800, were from moneys derived originally from the sale of the tract of land owned by B. F. Hall, and the same directed to be sold by his widow, who was also his executrix. The appellants, who are the heirs of Mrs. Hall, claim that, by the second clause of her husband's will, she was invested with an absolute estate in all the property of the husband, both real and personal, and therefore his children by his first wife had no interest in the land or its proceeds. The children maintain that the widow had only a life-estate, with the right to use such of the proceeds of the estate as might be necessary for her comfortable support. Under our statute, words of inheritance are not necessary to create a fee-simple estate, and unless the deed or will expresses a different intention, the estate will be absolute. Section 7 of article 1 of chapter 63, General Statutes (similar to the Revised Statutes), provides, "unless a different purpose appears by express words or necessary inference, every estate in land, created by deed or will, without words of inheritance, shall be deemed a fee-simple, or such other estate as the grantor or testator had power to dispose of." So, in changing the common law rule in regard to the title to land by deed or will, we are left by the statute to ascertain the intentions of the grantor, either from the express words of the instrument, or the necessary inference resulting from their use. Adopting this rule of construction, we have but little difficulty in arriving at the purpose of the testator from the express language used by him in his will, and if not, his intention is so manifest in each and every provision of that instrument as to leave but little room for construction. The second clause of the will provides: "I give and bequeath to my beloved wife, Mary F. Hall, all my property, including real

and personal, of every description whatever, giving her the right to sell and reinvest, as she may desire, any part of the same for her own separate use and benefit, and at her death I desire any portion of my estate remaining undisposed of shall go to my three daughters, Mary Davis, Annie Harbison, and Amelia Wilson."

Then follows the third and fourth clauses of the will, in which the testator says *that he has given two of his children, Wm. Hall and Valinda Nuckols, more than he is able to give the rest of his children,* and proceeds to say that he had given to Mary Davis and Annie Harbison more than he had to his daughter Amelia Wilson, and provides: "*After the death of my wife I wish Amelia Wilson to be made equal, and so with the other two, my object being to let each of these three daughters, Mary, Annie, and Amelia, share alike, and get all my estate remaining after the death of my wife.*"

The testator was disposing of his entire estate, and the first object of his bounty being his wife, his plain purpose was to make a liberal provision for her, by giving to her his entire estate for life, with the power *to sell and reinvest any part of the same for her own use and benefit,* and any of his estate remaining undisposed of at his wife's death to pass to his three daughters. The words, *for her own separate use and benefit,* were evidently intended to exclude the idea that his children or any one else should exercise any power or control over the estate during the life of his wife, and that she might sell and reinvest for her own exclusive use, not to acquire an absolute estate, but for her separate use and benefit during life. If the testator intended in the first place to give his wife the absolute fee, but few words were necessary to express this desire; and if he intended that she should sell and reinvest, and then become the absolute owner of the

estate in which the proceeds were invested, it was idle to have made any provision for his daughters, as she could at once, as she seems to have done, sell the entire estate, and by investing the proceeds deprive the children of any interest in it. Such was not the purpose of the testator, and the power given his wife to sell, and *reinvest* the proceeds, negatives the idea that he intended to give her any greater estate than for life, either in the property devised, or in the proceeds of that property when invested. The words, "*the estate remaining undisposed of shall go to my three daughters,*" follow directly after the power to sell and reinvest; and while the right to use and dispose of the estate by the wife for her comfortable support may not be limited to the income, it is manifest that this testator thought he was making some provision for his children, and doubtless would have been surprised if, after writing his will, he had been told that all the care taken with reference to the advancements he had made to each of his children, and his desire that the others should be made equal, amounted to nothing, as he had given to his wife in fee-simple the entire estate. He had confidence in his wife, and believed that she would use no more of his estate than was proper and necessary for her own maintenance. We see no reason why a life-tenant may not be invested with the power to sell, and with the additional power to use so much of the principal as might be necessary to maintain him. We do not construe this will as giving to the wife an unlimited dominion over the estate. She had no power to give it to another, or even to waste it in extravagance for the purpose of depriving these children of their interest in it. This is not the case of an absolute gift or the devise by the testator of an estate in fee to the

wife, and then an attempt to defeat the devise by a limita-tion over.

If we assume that an absolute estate was devised to the wife, or that the devise 'to her is inconsistent with that to the children, there might be room to question the right of recovery on the part of the appellees.   The real question is, whether the express language of the will, or the necessary inference from it, leads to the conclusion that the testator intended to create a less estate in his wife than a fee-simple. We are aware of the importance attached to words of inheritance used in a deed or will in determining the char-acter of title acquired; but in a case like this, as in fact in all wills, the intention of the testator must have a controlling influence; and to determine that the devise to the wife in the will before us is inconsistent with the devise to the chil-dren would be to defeat the plain intention of the testator expressed in each sentence of the will, and give the proceeds of his land to those who are strangers in blood, and without claim upon his bounty.

In the case of Carroll's heirs v. Carroll's heirs, reported in 12 B. Monroe, the testator made the following devise to his wife: "I give and bequeath to my beloved wife, Priscilla Carroll, the land on which I now live, and all other land I now have or may have hereafter; also all my slaves and stock of all kinds, &c., including all my estate, both real and personal.   But should she and my sons see proper to dispose of any part of any kind, they are at liberty to do so, and apply the proceeds thereof amongst my children hereafter named as may seem to them just and equitable."

By a codicil to this will the testator says: "In addition to what is bequeathed to my wife, she and my executor is.

hereby authorized to sell and dispose of any of my real and personal estate they may think proper, *and that my wife have as much of the proceeds of such sale as she may desire for her own use and benefit,* and the overplus, if any, to be applied as I have directed in the first part of my will on the subject."

The same argument for the appellants was made in that case as in this, and it was held that the wife took an estate for life only, this court saying that the statute changing the rule of construction did not preclude the question from arising upon wills which contain an indefinite devise without words of limitation, whether an estate in fee-simple passes to the devisee, or only an estate for life.   At common law, a devise of real estate without words of inheritance gave to the devisee an estate for life only, and now, by our statute, an indefinite devise, without words of limitation or of inheritance, will pass a fee-simple estate ; but at last, as said by this court in the case cited, " the effect of such a devise still depends upon the intention of the testator, to be gathered from his whole will, according to the settled rule of legal construction."

In the case of Smith v. Bell, reported in 6 Peters, the testator made the following devise : " I give to my wife, Elizabeth Goodwin, all my personal estate, whatever and wheresoever, and of what nature, kind, and quality soever, after payment of my debts, &c., which personal estate I give and bequeath unto my said wife to and for her own use and disposal absolutely, the remainder after her decease to be for the use of James Goodwin."

Chief Justice Marshall, for the court, said: " It is impossible to mistake the intent.   The testator unquestionably intended to make a present provision for his wife, and a

future provision for his son. The first and great rule in the construction of wills is, that the intention of the testator expressed in his will shall prevail, if consistent with the rules of law." The son took the personal estate left at the death of the mother.

The power of disposition in the case before us was only for the purpose of reinvestment, but if construed otherwise, and as being given for the purpose of enabling the wife to use the principal of the estate in the event her necessities demanded it, and still the children would be entitled to the estate remaining, whether of the original estate, or the estate in which it had been converted, to the extent of the investment made. This construction harmonizes each provision of the will, and effectuates the intention of the testator to provide for both his wife and children. It was a trust vested in the wife for those in remainder, subject to her right to use the property for her support and maintenance during life.

We are not disposed, however, to adjudge that the children are entitled to the property after satisfying the liens upon it created by the widow. She purchased this property in her own right, gave her individual notes for the purchase money, and borrowed eight hundred dollars, secured by mortgage on the property, to enable her to make the payments. It is proper to state that she made no effort to conceal the extent of the investments made of the money received from the sale of her husband's property; but, on the contrary, she said they should have the investment, although the deed is made to her in her own right. The appellees have traced the investment into this property, but their money did not purchase the whole of it, and there is no charge of bad faith against the life-tenant. The

property cost $3,000. The mortgage was $800, and the balance of the purchase-money, evidenced by the note of Mrs. Hall, due Ballard, is near $350. Take these sums from the original cost of the property, and it will show the amount of the trust fund invested in it. The appellees are either entitled to the amount of the trust fund invested, with interest from the institution of this action, or, if the purchase is to be treated for the joint benefit of the parties—that is, each entitled to the extent of the sum invested—the land should be sold first to satisfy these liens, and then the amount of the investment made out of the trust fund, and if there is any surplus money arising from the sale, it must be apportioned between the heirs of the life-tenant and these children in proportion to the amount invested by each in the original property, and the rents, if any, accruing since the death of the life-tenant, to be apportioned in the same way. Mrs. Hall had invested, so far as these appellees are concerned, the mortgage debt and the purchase-money due on the purchased property. This is paid to the parties' to whom she executed her notes. The amount of the trust fund being also paid, the surplus remaining should be apportioned in proportion to the amounts invested. This seems to us to be the equity of this case.

The judgment below is reversed, and cause remanded for proceedings consistent with this opinion. The cost will be taxed as if there was one appeal.