CASE 65.—ACTION BY THE FIDELITY TRUST COMPANY AS
EXECUTOR OF THE WILL OF A. M. KASEY, DE-
CEASED, AGAINST THE CITIZENS' TRUST COM-
PANY AS ADMINISTRATOR, &c., FOR THE CON-
STRUCTION OF THE WILL.—February 4, 1910.

## Citizens' Trust Co. v. Fidelity Trust Co.

Appeal from Hardin Circuit Court.

WEED S. CHELF, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Af-
firmed.

1. Wills—Construction—Intention of Testator.—The intention of
   testator is the cardinal rule in the construction of wills, to
   be determined by a consideration of all its provisions; and
   if such intention can be clearly conceived, and is not con-
   trary to some positive rule of law it must prevail.
2. Wills—Construction.—Testator, by the third paragraph of his
   will, bequeathed to his brother the residue of his estate for
   life, in case he survived testator, with power to dispose of
   all or any part thereof by will.  By the fourth paragraph
   he provided that after the brother's death "(should he sur-
   vive me and die without making a will)" testator bequeathed
   a certain farm to K. and wife, for life, remainder to their
   children.  By the fifth clause testator bequeathed the rest
   and residue of his estate in trust for a niece and her child-
   ren, and by the seventh clause provided that if the niece
   should die without surviving issue, testator bequeathed all
   the estate, devised in trust for her, to the American Bible
   Society in fee.  Held, that all the bequests made in the
   paragraphs subsequent to the third were conditional on the
   failure of the brother to survive testator, or, surviving him,
   on his failure to dispose of the property by will; and hence,
   neither of such conditions having occurred, such subsequent
   provisions became nugatory.

S. M. PAYTON, HAZELRIGG & HAZELRIGG and GEO. K.
HOLBERT for appellant.

L. A. FAUREST, SPAULDING & STILES and BENJAMIN S. WASHER for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Two questions are raised by this appeal, first, the construction of the will of A. M. Kasey; and, second, is a perpetuity created by the seventh clause thereof? The following is the will under consideration:

"Item First—I appoint my brother, S. W. Kasey, executor of this my last will and request that he be allowed to qualify without giving security. If my said brother should for any reason fail or decline to qualify or should at any time cease to act as such executor, I appoint the Fidelity Trust and Safety Vault Company, of Louisville, Ky., executor of this my last will.

"Item Second—I direct my executor above named to pay all my just debts and funeral expenses as soon after my death as convenient.

"Item Third—I give, bequeath and devise to my brother, S. W. Kasey, all the rest and residue of my estate, real, personal and mixed, wheresoever situated for and during his natural life, should he survive me with power to dispose of all or any part of the same by last will.

"Item Fourth—After the death of my said brother (should he survive me and die without making a will) I devise the farm, about fifty acres, near Vine Grove, Ky., to Robert Kasey (of color) and his wife, Jane, during their lives with the remainder in fee to their children.

"Item Fifth—All the rest and residue of my estate, including my United States and city of Louisville bonds, I bequeath and devise to the Fidelity Trust

and Safety Vault Company of Louisville, Kentucky, in trust for my niece, Emma F. Kasey, and her children after her death. The said trustee shall pay all the taxes, insurance and repairs on the real and personal estate, including the farm devised to Robert Kasey during the lifetime of the tenants, and shall out of the income from the estate pay to said Emma F. Kasey one hundred ($100) dollars per month for the support of herself and children, should she have any, and she shall have the right to use and occupy as a home for herself and family the house and lot in Cloverport, Ky., purchased by my brother and myself of Owen Raitt and wife subject to their life estate.

"Item Sixth—After the payment of said taxes, expenses and one hundred ($100) dollars per month to Emma F. Kasey, all the remainder of the income from my estate shall be invested in bonds of the city of Louisville and added to the principal of my estate, but in case there should be any extra expense on the property at Cloverport caused by fire, storm, or other casualty, such loss shall be made good out of the surplus income of my estate.

"Item Seventh—If my said niece, Emma F. Kasey should die leaving no children or issue surviving her, or if such child or children should die before attaining the age of twenty-one (21) years, leaving no lawful issue surviving them, then in such event I bequeath and devise all the estate devised in trust for her to the American Bible Society in fee simple."

In the construction of wills the text-writers are agreed that it is the duty of the court to ascertain the intention of the testator and this intention is arrived at by considering the will as a whole and giving to the language used its customary and usual mean-

ing. Each section or paragraph thereof must be read in connection with the remaining sections or paragraphs, and that construction adopted, where it can consistently be done, which will effectuate and give force to each paragraph and clause of the will. The general rule of construction is aptly stated in Page on Wills, Secs. 461, 462, as follows: ''The sole object and intention of the rules upon the subject of construction is to ascertain the intention of the testator. As was said by Chief Justice Marshall: 'The intent of the testator is the cardinal rule in the construction of wills, and, if that intention can be clearly conceived, and is not contrary to some positive rule of law, it must prevail.' The purpose of the court in construing a will is solely to ascertain the intention of the testator as the same appears from a full and complete consideration of the entire will. The intention of testator is said, in a recent Virginia case, to be the 'life and soul of a will;' and, if this intention is clear and is not in violation of any rule of law, it must govern with absolute sway. In construing a will the court has no intention to make a will for the testator, or to attempt to improve upon the will which testator actually made. Assuming, as we must in the case of construction, that the testator had testamentary capacity at the time of making the will, that he was under no restraint, and the will as made is in full compliance with the rules of law upon the subject, the sole question for the consideration of a court of construction is what testator meant by the provisions of the will which he has seen fit to make. This proposition has been put by the courts in such a variety of forms, and with such uniformity of view, that it is hackneyed. * * * When testator's intention is clear, every rule of construction yields to such intention.

As was said in a recent Maine case: 'There is, however, one fundamental rule or consideration which is paramount to all others, and which should never be overlooked, and that is that the intention of the testator, as declared by the will itself, shall be allowed to prevail, unless some principal of sound policy is thereby violated.' The intention of the testator, which, as we have seen, the courts endeavor to ascertain and enforce, except where forbidden by positive rules of law, is to be ascertained from a consideration of the will of testator as a whole, and not from its disjointed fragments. The courts will approach the problem of construing a will with a prima facie assumption that the testator, in drawing and executing his will, had a purpose which was clear, definite, and thoroughly consistent. * * * This intention must be collected from the language of the whole will, interpreted with reference to the obvious or manifest object of the testator; and all parts of the instrument must be construed in relation to each other so as to give meaning and effect to every clause and phrase, and, if possible, form one consistent whole, every word receiving its natural and appropriate meaning. This proposition, like the preceding one, is established by an enormous number of cases. Thus, as a particular application of this general principle, if two constructions are possible to a clause of a will, one of which is in harmony with the provisions of the remainder of the will, and the other of which is at variance with them, the court will assume that the correct construction is the one which will harmonize this clause with the rest of the will."

Applying this rule to the will under consideration, we find that the testator in item 3 of his will, gave to his brother for life all of his estate of

every kind and authorized and empowered him to dispose of all or any part of same by will in the event his brother survived him. In items 4, 5, 6, and 7 we find a clearly expressed purpose on the part of the testator to dispose of his estate in the event he outlived his brother, or his brother died without exercising the power conferred upon him in item 3. There is nothing in the language used in items 4, 5, 6, and 7, or in any one of said items, that would indicate an intention on the part of the testator to limit the estate which he had given to his brother in item 3, or to withdraw or curtail the power of disposition conferred upon him in item 3. On the contrary, just the reverse of such an intention on the part of the testator is gathered from a reading of item 4, in which it is clearly expressed that it is to become effective only in the event that his brother survive him and die without making a will. Having given to his brother his entire estate for life, with full power of disposition by will of all of it in item 3, he provides in item 4 that in the event his brother survives him, and fails to exercise this power, a certain portion of his estate shall go, under certain limitations and restrictions, to his negro servants; and, thus having carved out of his estate a portion thereof, he directs in items 5, 6, and 7 what shall be done with the remainder. Clearly these clauses must be read in connection with items 3 and 4 in order that the intention of the testator may be fully gathered and understood. When so read, it is apparent that the validity of items 4, 5, 6, and 7 is made to rest entirely upon his brother's surviving him, and then dying without making a will, or, in other words, without exercising the power given him in item 3 to do so.

vol. 136—35

It is conceded that S. W. Kasey survived the testator, and made a will disposing of all of the property, in which he took a life estate under the will of his brother, A. M. Kasey, and hence the contingency which items 4, 5, and 6, and 7 were made to meet never happened. As no estate whatever passed to the American Bible Society under item 7, it becomes unnecessary to enter upon a consideration of the question as to whether or not a perpetuity was created thereby.

The trial court having reached conclusions in harmony with the views herein expressed, the judgment is affirmed.

---

CASE 66.—ACTION BY THE FIRST STATE BANK AGAINST THE LIVINGSTON COUNTY BANK AND OTHERS.— September 29, 1909.   Petition for rehearing overruled February 4, 1910.