## Watkins, et al. v. Bennett.

(Decided May 31, 1916.)

### Appeal from Fayette Circuit Court.

1. Wills—Construction—Intention.—In determining what is the proper construction of a will, it is a rule of substantially universal application that the intention of the testator expressed in the will must prevail, if such intention is not inconsistent with the established rules of law.

2. Wills—Construction—Intention.—For the purpose of arriving at the intention of the testator, the entire will and all of its provisions will be looked to, and if there are ambiguous terms or clauses in a will, to ascertain the proper interpretations of them, the motives which can be reasonably supposed to have actuated the testator, his purpose in making a will, the relations existing between the testator and the devisees, and the natural objects of his bounty, the nature of his property and the amount of it may be looked to in aid of the language in ascertaining his intentions.

3. Wills—Construction—Intention.—If general rules of construction are not inconsistent with the manifest intentions of the testator, as ascertained from the entire will and attending circumstances, they will be followed, yet, when the intention of the testator is ascertained, it must control and rules of construction will not defeat the plain intention of the testator.

4. Wills—Construction—Intention.—Each clause of a will must be read in connection with every other clause, and the intention of the testator gathered from a consideration of the whole of it.

5. Wills—Construction—Intention.—The rule that one who makes a will is presumed to dispose of his entire estate is a rule of con-

struction, and does not authorize a court to dispose of that which is not in fact disposed of by the will.

6. Wills—Construction—Intention.—The latter clause in a will must control if repugnant to a previous clause, but if the intention of the testator can be gathered from the whole will, the intention of the testator must be followed and will determine the construction.

7. Wills—Construction—Intention.—While it is allowable to transpose words and even clauses of a will and to place them in a different order, so as to make them comply with the intention of the testator, there is no warrant, where the words and clauses are plain and sensible, to transpose them and arrange them in a different order from that made by the testator, in order to create a different meaning and construction.

J. N. ELLIOTT and GEORGE B. KINKEAD for appellants.

JOSEPH S. BOTTS for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

This appeal involves the proper construction of the last will and testament of Phillip Bennett, deceased. The testator, at the time of his death, was a citizen of Fayette county. The facts and circumstances, which the record discloses, as surrounding the testator, at the time of the execution of his will, are as follows:

The appellee, Sue Snedaker Bennett, was his second wife; his former wife was dead; there were not any children as the fruits of his first marriage; he had recently been married to appellee; he and appellee were contemplating making a journey to Seattle, in the state of Washington; he then had two married sisters, one of whom lived in the province of Ontario, in the dominion of Canada, and the other resided in either the state of Massachusetts or New Hampshire; that he had eight nephews and nieces, who were the children of his deceased brother, Joseph Bennett; the nephews and nieces resided in the province of Ontario, in the dominion of Canada, except one, Marie Lalonde, who resided in the state of New York. The record does not disclose the value of his estate at the time of the execution of the will, except that he had real estate of possibly the value of $5,500.00, but the value of any other property, or in what it consisted is not disclosed.

The will was executed on the 17th day of June, 1909, and testator died on the 30th day of July, 1914. He and appellee made the journey to Seattle, which they had

in contemplation at the date of the execution of the will, but returned safely from the journey to Lexington, Ky., where they resided together until the death of testator. The testator preserved the will until his death. After the execution of the will, the testator became the owner of other real estate in addition to that owned by him at the execution of the will, and at his death the real estate owned by him was of the value of $23,000.00. Whether the real estate acquired by him after making the will was purchased by funds acquired by him after that time or with funds which he had on hand at the date of the making of the will is not disclosed. At his death, in addition to his real estate, valued at $23,000.00, he was the owner of personal property of the value of about $2,500.00, and owed debts in the sum of between five and six thousand dollars. In round numbers his estate, at his death, was of the value of about $20,000.00. There were not any children survived him as the fruits of his last marriage.

The will was as follows:

"June 17, 1909.

"I, Phillip Bennett, of the city of Lexington, Fayette Co., state of Kentucky, being of sound mind and memory and knowing the uncertainty of life, do make, publish and declare this my last will and testimony.

"I. I desire all my just debts paid.

"II. My executrix, which I shall name hereafter, shall buy a lot in the Lexington cemetery and build a vault as durable as possible and pay for it out of my estate.

"III. I bequeath to my wife, Sue Snedaker Bennett, all remaining of my estate to dispose of as she pleases for her own use. I request the court to ask of her no security or inventory of my property.

"IV. In case of my wife's death, at the same time as mine, or during this trip, as we are going on a long journey, I further provide and appoint Miss Nannie W. Alexander as executrix of my estate, to have my vault built at the cemetery in Lexington, Ky., as above described, also, to leave $2,000.00 to keep this lot in repair, also keeping proper decorations on the ground; also move the remains of my first wife from the Joana Foley lot and inter in my lot. The inscription on the vault shall bear only the names of myself and wives.

"V. I bequeath to the living children of my brother, Joseph Bennett, residing at Alexander, Canada, $4,-000.00, and to each of my sisters, $2,000.00.

"VI. I give to George Watkins, colored, the house and lot on Robinson Avenue, to do with as he pleases.

"VII. I bequeath to Miss Nannie W. Alexander all my furniture, pictures and $3,000.00 in cash for settling up my estate. I request the court to ask of Miss Nannie W. Alexander, my executrix, no security or inventory of my estate.

"VIII. The remainder of my estate she shall dispose of as I have directed.

"Signed by me, PHILLIP BENNETT,

"Witnessed by:
"DANIEL E. LAWELL,
"H. W. BAIN,"

The controversy is between the appellee, upon one side, and the children of testator's deceased brother and sisters and George Watkins, the devisees named in the fifth and sixth clauses of the will, who are the appellants upon the other side. The appellee contends that only the first, second and third clauses of the will are effective upon the devolution of the estate; that the fourth, fifth, sixth, seventh and eighth clauses of the will were effective only in the event of the contingency expressed in the fourth clause—that they only took effect upon the condition that the testator and appellee should die at the same time, or that the appellee should die upon the journey to Seattle, and the condition never having arisen upon which their validity was predicated, they are not living or valid provisions of the will. The appellants concede that the effectiveness of the fourth clause is dependent upon the condition that would arise if appellee should die at the same time as the testator or while upon the journey to Seattle, and that the contingency upon which it was conditioned never having arisen, it is not now effective, but they contend that the devises made in the fifth and sixth clauses were not made to depend upon the happening of any contingency, and hence are to be enforced as living provisions of the will. The court below held in accordance with the contentions of appellee and hence this appeal.

The operation of the fourth clause of the will is expressly made to depend upon the happening of a contingency. By the first clause, the testator directs the

payment of his debts. By the second clause he directs the purchase of a lot in the cemetery and the erection of a vault, to be paid for out of his estate. By the third clause, he devises to appellee "all remaining of my estate, to dispose of as she pleases for her own use." By clause three, he also requests the court to require no security of his wife, nor any inventory of his estate. Evidently, he contemplated that his wife should administer upon his estate. If he had stopped at this point, there could be no doubt that he had fully disposed of his entire estate and had died intestate as to no part of it. Having in contemplation, however, a long journey and the possibility of death coming to his wife or to his wife and himself by the dangers incident to travel,. he, by the fourth clause, names Miss Nannie W. Alexander as his executrix, and gives directions to her as to the purchase of the cemetery lot and the erection of a vault, "as described above," directs her to set apart $2,000.00 of his estate to keep the lot in repair and proper decorations on the grounds, and directs the removal of the body of his first wife from the lot wherein it was then buried and its interment in the lot to be provided. He, however, makes the appointment of Miss Alexander as his executrix and the directions to her embraced in the fourth clause of the will expressly depend upon the condition: "In case of my wife's death at the same time as mine or during this trip, as we are going upon a long journey." It will be observed that this immediately follows the clause devising to his wife his entire estate after the payment of his debts and providing the vault and the request that the court do not require any security of his wife, nor the exhibition of any inventory of his estate. It is clear that there would be no force or significance in the part of clause three, in which the court is requested to require no security of his wife and to require of her no inventory of the estate, if it was his intention to appoint Miss Alexander the executrix of his will, regardless of whether his wife was then living or not living. Furthermore, the latter clause of clause four provides, that only his name and those of his wives should be inscribed upon the vault. It could not be reasonably held that the testator intended that the name of his last wife should be inscribed upon the vault while she was yet living. Hence, gathering the intention of the testator from the entire will, and giving

to the language of it its ordinary and usual significa-tion, it is very clear that the testator only intended that the appointment of Miss Alexander, as executrix, should depend upon the fact, that the appellee, his wife, should not be living at the time of his death. The wife, not hav-ing died at the same time of the death of the testator, nor upon the contemplated journey to Seattle, but hav-ing outlived the testator, the provisions of the fourth clause could never become operative. There can be no doubt that clauses seven and eight are, also, inoperative and can not be effective, since clause seven devises to Miss Alexander the testator's furniture, pictures and $3,000.00 in money, as the compensation for her services as executrix in administering upon the estate. Of course this devise could not be valid or effective, except in the event of her performing the duties of executrix, which could not occur unless the appellee died upon the jour-ney to Seattle, or at some time when the testator should also die. The eighth clause, also, became inoperative, because the direction in it is to Miss Alexander, and in the event she became and performed the duties of execu-trix, which, as above stated, was manifestly dependent upon the condition which is expressed in the fourth clause.

This leaves to be considered, only, the fifth and sixth clauses of the will. In fact, this is the crux of the con-troversy. The question is: "Do these two clauses de-pend for their validity and effect upon the contingency stated in the fourth clause of the will, or are they in-dependent of its effect? Shall the condition upon which the fourth, seventh and eighth clauses depend for their validity, be read into the fifth and sixth clauses and con-trol their operation? Or is the contingency expressed in the fourth clause limited in its effect to that clause, alone, or only to it and the seventh and eighth clauses?"

In determining what is the proper construction to be placed upon the provisions of a will, it is a rule of sub-stantially universal application, that the intention, of the testator expressed in his will, must prevail, provided that intention is not inconsistent with the established rules of law. The courts must ascertain the intention of the testator and give it effect, if the intention is not con-trary to law. Buschmeyer v. Klein, &c., 139 Ky. 124; Thackston v. Watson, 84 Ky. 210; Hunt v. Johnson, 10 B. M. 344; Redfield, vol. 1., 437; Anderson v. Hall, 80

Ky. 91; Bayless v. Prescott, 79 Ky. 252; McFerran v. Fidelity Trust Co., 140 Ky. 536; Hegan v. Netherland, 141 Ky. 686; Citizens Trust Co. v. Fidelity Trust Co., 136 Ky. 540; Patrick v. Patrick, 135 Ky. 307.

In arriving at the intention of the testator, the entire will and all of its provisions will be looked to, and if there are ambiguous terms or ambiguous clauses in a will, to ascertain the proper interpretations of them, the motives which can reasonably be supposed to have actuated the testator, the purpose of his making a will, the relations existing between the testator and devisees, the nature of his property, and the amount of it, may be looked to in aid of the language in ascertaining the intention of the testator. Henry v. Henry, 81 Ky. 342; Reuling's Exor. v. Reuling, 137 Ky. 637; Levy's Extx. v. Leeds, 151 Ky. 56. While, if general rules of construction are not inconsistent with the manifest intention of the testator, as ascertained from the whole will and attending circumstances, they will be followed, yet, when the intention of the testator is ascertained, it must control and rules of construction will not defeat the plain intention of the testator. Reynado v. Reynado, 82 Ky. 5; Guthrie v. Turner, 14 R. 336; Thackston v. Watson, 84 Ky. 206; McClelland's Exrs. v. McClelland, 132 Ky. 284; Cook v. Hart, 135 Ky. 650; Hayman v. Morgan, 148 Ky. 230; Todd's Guardian v. Todd's Heirs, 155 Ky. 209; O'Rear v. Bogie, 157 Ky. 666; Loy v. McClister, 141 Ky. 800.

Each clause of a will must be read in connection with every other clause, and the intention of the testator must be gathered from a consideration of the whole of it. Barber's Exrs. v. Baldwin's Exr., 128 S. W. 1092; Duncan v. Berry's Admr., 142 Ky. 178; Gray v. Garnett, 148 Ky. 34; Hanna v. Prewitt, 153 Ky. 310.

It is apparent that a court would not be justified in picking out a clause or two of a will and from them determine, that a construction to be placed upon it or them from their language, should prevail in spite of what the other clauses of the will may provide.

The fact that two wills can not probably be found exactly alike, with the attendant circumstances alike, makes it apparent that the rules of construction can not be applied to every will alike, and that, in the main, each will must be construed according to its own terms, and for that reason the intention of the testator has been

adopted as the great primary principle to be relied upon in the construction of wills. Taking into consideration the language of the will, in the case at bar, and it may be said, that the few attendant facts in the record do not afford much aid, it seems clear, that the intention of the testator was to bestow upon his wife his entire estate, after the payment of his debts, and the purchase of a lot in the cemetery and the erection of a vault thereon, if his wife should be living at the time of his death. It further seems, that his intention was, if his wife should die before him or at the time of his death, to dispose of his estate according to his own wishes, and not to permit it to pass under the laws of descent and distribution. The document is not ambiguous to the extent of hiding or making uncertain his intentions, if the language used by him is given the usual meaning and significance, and read in the light of the presumption that the testator was sane and knew his intentions and was capable of a continuity of thought. Considering clauses one, two and three of the will, as said above, there is no way of doubting his intentions. He intended that his just debts should be first paid; that a burial lot should be bought and paid for out of his estate, and the remainder of his estate should vest in his wife absolutely. The devises by these three first clauses are predicated upon the implied condition, that his wife should survive him. If she did not survive him so as to be the beneficiary of the property, his intention and desire was to make another disposition of it. If she died and he survived, he then could make such disposition of it, as he might desire. If she died, while making the contemplated journey, he feared, that the exigencies might be such that he would probably die, before being able to reach his home and make another disposition by will or otherwise of his property. If she should at any time die, at the same time he died, she would not be able to enjoy the property, and he being, also, dead, could make no further disposition of it. It can be reasonably supposed, that actuated by these motives, as drawn from the entire will, by the fourth and succeeding clauses of the will, he proceeded to make another disposition of it, while he could do so, to guard against the contingencies above stated, and predicated upon the condition, that his wife should die upon the journey, or should, at any time die, at the same time he should die.

To effectuate this purpose, by the fourth clause of the will, he provided that in the event his wife should die at the same time he died or should die upon the journey, he "further provided" that Miss Alexander should be executrix of his will; should have built the vault in the cemetery; should set apart $2,000.00 to keep the lot in repair and the proper decorations upon the grounds; should remove the body of his first wife to the lot, and should have his name and those of his wives placed upon the vault; that she should have $3,000.00 and his furniture and pictures for administering upon his estate; and that his nephews and nieces, the children of his deceased brother, should be paid $4,000.00, to be divided between them, and his two sisters should have $2,000.00 each.

The eighth clause of the will, doubtless refers to the devise in the first clause of the will, provided the fourth clause should be operative by the death of appellee before the testator, and at the time of the making of the will the fourth, fifth, sixth, seventh and eighth clauses made a disposition of his entire estate, with a possibility of some small portion being left undevised, although his intention seems to have been to make a disposition of the entire estate, in the event his wife did not survive him, as well as in the event she did survive him. The rule that it will be presumed that one who makes a will disposes of his entire estate is a rule of construction and not one which authorizes the court to dispose of that which is in fact not disposed of. Walters v. Neafus, 136 Ky. 758. We are fortified in the conclusion, that the devises made in the fifth and sixth clauses of the will, as well as the devises in the fourth, seventh and eighth clauses, were to become effective, only in the event of the death of appellee before that of the testator, by the fact that the fifth and sixth clauses are situated just following the fourth clause and immediately preceding the seventh clause, and the operation of the fourth, seventh and eighth clauses is without doubt conditional. The fifth and sixth clauses are embraced in that portion of the will, wherein the testator was making a disposition of his estate, which was predicated upon the condition, that the death of his wife should be at the same time upon which he should die, or while she was upon the journey, and when he would probably die before having opportunity to make other disposition of his estate. To hold that the devises made in the fifth

and sixth clauses are not dependent upon the condition expressed in the fourth clause would make the different provisions of the will inconsistent with each other. It would be to make the testator, in the third clause, devise his entire estate to appellee, absolutely, and then in the face of this, by the fifth clause, to devise $8,000.00 to others, and by the sixth clause, to devise a house and lot to another. To give effect to the devises in the fifth and sixth clauses would be to render nugatory to the extent of the devises in the two latter clauses, the absolute devise in the third clause. As a general rule, the last clause in a will must prevail, if it is repugnant to previous provisions made by the testator, but, as was said in Urey's Admr. v. Urey's Executrix, 86 Ky. 353:

"While the last clause in a will must control if repugnant to previous provisions made by the testator, still the intention of the testator must determine the construction; and where there is a seeming inconsistency that can be reconciled, as in this case, in determining the intention of the testator from the entire will, the chancellor will not hesitate to adopt the construction that follows the intention of the testator."

To hold that the devises made in the fifth and sixth clauses are contingent upon the condition expressed in the fourth clause makes the entire will a harmonious whole, and gives effect to each clause of it, to the extent that it was intended, that they should have effect.

It is suggested by appellants, that a transposition of the clauses of the will can and should be made, when a will will then be constructed, which will leave the different provisions of the will consistent with each other and then each of the clauses of the will can be made operative, and thus avoid the effect of the condition stated in the fourth clause, as to any of the devises, except those in the fourth clause. To do this, however, would be violative of the well-established rules of law upon the subject. To authorize such a transposition of the clauses, it must be necessary to carry out and give effect to the intent of the testator. It being clearly his intention to bestow his entire estate, subject to the devises made in the first and second clauses of the will, upon his wife, absolutely, if she survived him, it would manifestly violate his intention to so transpose the clauses, as to bestow one-half of his estate upon others, although she survived him. No transposition of the

clauses is necessary to arrive at his intention. The very order in which one writes is most frequently indicative of his intention. As was said in Augustus, etc. v. Seabolt, etc., 3 Met. 159: "Nor is it necessary to take all the words in the order they are, as the courts may arrange them in a different order and transpose them to comply with the intention. But in no case, where the words are plain and sensible, is a transposition to be made in order to create a different meaning and construction, much less to let in different legatees and devisees; nor where a former clause is express and particular shall a subsequent one enlarge it." Hunt v. Johnson, 10 B. M. 344; 40 Cyc. 1399, 1400, 1401, 1402. The same rule should be applied to clauses of a will.

The judgment is therefore affirmed.