## Carroll, et al. v. Cave Hill Cemetery Company, et al.

(Decided November 15, 1916.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1.  Wills—Intention of Testator Controls Construction.—The intention
    of the testator controls in the construction of a will and no rule of
    construction is allowed to override the plain intention of the tes-
    tator.

2.  Wills—Construction—Intention—Ambiguity.—If the language of
    the will is plain and unambiguous, the intention of the testator
    must be gathered from the will itself, and it is only when there
    are ambiguous terms or ambiguous clauses in a will the motives
    which may reasonably be supposed to have actuated the testator,
    the purpose of making the will, the relations between the testator
    and devisees and the nature and extent of the property, may be
    looked to to assist the language of the will in showing the intention
    of the testator.

3.  Wills—Intention of Testator.—Where the intention of the testator
    is expressed in plain and unambiguous language, parol or other
    extrinsic evidence is not competent nor permissible to show that
    the testator had an intention different from that expressed in the
    will.

4.  Wills—Latent Ambiguity.—A latent ambiguity in a will is where
    it is plain and intelligible upon the face of the words, and no du-
    plicity, indistinctness nor uncertainty appears or is known to exist
    until the words of the will are brought into contact with the col-
    lateral facts and are applied to the subject, which they describe.

5.  Wills—Latent Ambiguity—Intention of Testator.—When a latent
    ambiguity exists in a will, it is permissible to prove the declara-
    tions of the testator at or about the time of the execution of the
    will, for the purpose of identifying the objects or persons, which
    it is intended that the language of the will should affect, and to
    prove the facts and circumstances, which surround the testator at
    the time of the making of the will, in order to explain the language
    of the will and show its application to the persons and objects
    intended, but not to prove that the testator had an intention other
    than what the language will embrace.

BURWELL K. MARSHALL and GIFFORD & STEINFIELD for
John B. and Julia Carroll.

ROBERT J. HAGAN for Lewis G. Castleman.

BASKIN, DUFFIN, KINKEAD and SAPINSKY & DUFFIN for
appellee, Cave Hill Cemetery Company.

RANDOLPH H. BLAIN for appellee, Fidelity Trust Company.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The Fidelity Trust Company, as the executor of the last will and testament of Fannie Castleman Eastin, instituted this action in the Jefferson circuit court for a settlement of its accounts, and for a final settlement of the estate of decedent, and a distribution of the assets of the estate to the devisees, in accordance with their interests. The testatrix died about the 20th day of February, 1912, and her will was admitted to probate in the Jefferson county court very shortly thereafter. By the first clause of the will, the Fidelity Trust Company was appointed executor of it. The second clause of the will is as follows:

"Second: I direct my executor to set apart twenty-five thousand dollars ($25,000.00) to appropriate same in the erection of a mortuary chapel, which is to be located in Cave Hill Cemetery just beyond the present basin, which is directly opposite to and in front of the gate of entrance to this cemetery, and at the end of the avenue leading from this gate. The said chapel I wish erected immediately after my death, in a substantial but artistic gothic style of architecture, with seating capacity for not less than one hundred and fifty persons. Over the entrance door of this chapel I wish distinctly carved in raised letters the following inscription: "To the Glory of God, and in the Memory of my Dear Husband, George B. Eastin, and our only child, 'Dear Little George.'

"I, also, desire that behind the pulpit of said chapel there shall be placed in the wall two tablets of stone, one in memory of my dear husband, the other in memory of our 'Dear Little George,' with name and date of birth and death of each, carved distinctly in raised letters. When said chapel is completed, it shall be the property of Cave Hill Cemetery, and shall be preserved and maintained by said Cemetery Company."

The other provisions of the will have no relation to the question for decision upon this appeal.

Neither the testatrix, nor the executor of her will, having the ownership or control of the grounds of the Cave Hill Cemetery Company, the bequest to erect a mortuary chapel upon its grounds could not be carried into effect without the consent of the Cemetery Company. Upon the request of the executor to be permitted

to carry into effect the bequest, the Cemetery Company demanded that the exact location for the erection of the chapel should be designated and approved by the chancellor, and that the plans and specifications of the proposed chapel be prepared by a competent architect, and the costs of the erection of the chapel and any changes necessary to be made in the grounds by the Company be ascertained and furnished to the Cemetery Company, before giving its consent to the erection of the chapel. The executor then filed a petition in its suit for a settlement of the estate, in which it sought the advice of the court as to the definite site for the erection of the chapel. Thereupon, an issue was joined, between the heirs of the testatrix upon the one side, and the executor and the Cemetery Company upon the other, as to where under the terms of the will of the testatrix, the mortuary chapel should be erected. The heirs contend that the will requires its erection upon the piece of ground designated upon the diagram, which follows, by the letter "A." The executor and Cemetery Company contend that its erection at any point to the east of the dotted circle, marked "Basin" and between the parallel lines, which are drawn tangent to the north and south sides of the "basin," will comply with the requirements of the will, and have selected the point indicated by the letter "C" upon the diagram, as the suitable and proper place for the erection of the chapel. To make the references to the objects mentioned, intelligible, it will be necessary to make an explanation of the diagram. The circle of dots represents the "basin," which is a depression in the ground to the depth of six feet below the level of the encircling road beds, and is covered with trees and shrubs. The "basin" is two hundred and fourteen feet in diameter from north to south. The parallel lines, which extend from the point marked "Gate Entrance" to the "basin," describes the road which extends from the entrance to the "basin," and when it arrives at the "basin," it passes around it upon either side and around plat "A," as the parallel lines indicate. The roadway upon either side of the "basin" is twenty feet in width. To the southeast and east of the roadway, which encircles the "basin" upon the east, around the plat "A," and on toward the north, the cemetery is divided into burial lots as indicated upon the diagram, the most of which are occupied. The point

"C" is situated about midway of a wooded reserve, which extends from the roadway to the outside boundary wall of the cemetery grounds upon the north. "C" is eighty feet from the rim of the "basin," and at that point the ground declines rapidly from the level of the roadway to the depth of ten or twelve feet. "C" is thirty-four feet from a line drawn along the center of the entrance avenue and continued through the "basin" to a point where a line from "C" would intersect it, at right angles. In addition to the roadway between the "basin" and "C," there is, also, a walkway, and a space of ground covered with grass, about fifteen feet in width. Plat "A" lies contiguous to the "basin," and is about one hundred feet in width upon the line of the rim of the "basin," and extends about one hundred and fifty feet back to its apex, where the roads which encircle the "basin" come together. Plat "A" is somewhat elevated and is a very conspicuous point in the grounds of the Cemetery, and a building upon it would be visible from nearly all points in the Cemetery. To the east of plat "A," and beyond the roadway in that direction, are many fine tombs, mausoleums and monuments, which have been erected by the owners of the burial lots, in the memory and honor of the dead, whose remains occupy the lots. Much thought, care and labor have been expended, in the adornment and beautification of the burial lots and reserves in the cemetery, and the roadways have been laid out through the grounds with an eye to the promotion and preservation of their scenic beauty, and the entire cemetery, wherein about forty-eight thousand persons have been buried, is filled with beautiful trees and shrubs.

The testimony of a civil engineer and a landscape gardener, each of whom is in the service of the Cemetery Company, were taken, and it was proven by them, that in their opinion the point "C" is a more suitable place for the erection of the chapel than plat "A;" that if it was erected upon plat "A," it would be necessary to construct a driveway, thirty feet in width, around the eastern rim of the basin; that a receiving tomb is an attachment to a modern mortuary chapel, in which to place a dead body until the chapel services may be had; that this receiving tomb should be beneath the chapel floor, and if the chapel should be erected upon plat "A," it would be necessary to elevate the chapel floor

ten feet above the ground to permit the receiving tomb beneath, or, else, to excavate to the depth of ten feet in the ground for the receiving tomb; that there is not sufficient space upon plat "A" to beautify the chapel by planting about it shrubs and trees; that if the chapel was erected upon point "C," no excavation would be necessary for a receiving tomb, as the rapid decline of the ground from the front of the chapel toward the rear would make it unnecessary; that the sides and back of the chapel would be surrounded and hidden by the trees; that the sum of $25,000.00 was not sufficient to build a chapel with artistic architectural sides, except upon the front, and that if erected upon plat "A," the plain sides and back of the building would not meet the approbation of the owners of the burial lots which lie upon the other side of the roadway from it; that the cost of erecting the chapel upon plat "A" would be about $1,000.00 in excess of the cost of its erection upon "C."

The depositions of Gen. John B. Castleman and John Stites were taken and filed as evidence in this action. By the former, it was proven, that he is a brother of the testatrix, and that from conversations had with her, that her general purpose in regard to the site for the mortuary chapel was that it should be located near the "basin," at the end of the avenue which furnishes the entrance from Broadway or Baxter Avenue to the cemetery, and that from his understanding of her intention, gathered from conversations with her, the erection of the chapel at point "C" would be a fulfillment of her intentions as to the site of the chapel, but that he did not know her final determination in regard to the matter until he had heard her will read. By John Stites, it was proven that he was the draughtsman of a former will of the testatrix, in which she provided for the erection of a mortuary chapel in the cemetery, in much the same language, as that used in her last will and testament, except that a much larger sum was set apart for the purpose in her former will than in the last one. The will which was written by the witness, was made in 1897 or 1898, and some months after that time he was in the cemetery in company with testatrix, when she pointed out to him the point at which she desired the chapel to be erected, and the point designated by her was near the eastern edge of the "basin," and approxi-

mately near the place designated on the diagram by crossed marks and the letters, "J. S." She requested the witness to have an interview with the president of the Cemetery Company, and that the president stated, that he would personally oppose the erection of any mortuary chapel upon plat "A;" that he informed the testatrix of the result of his interview with the president, and she seemed much disappointed, but did not express any purpose to change her purpose in regard to the site of the chapel. These conversations with testatrix were ten years or more before the making of the will in controversy, which was executed in December, 1910.

The circuit court adjudged, upon the pleadings, exhibits and proof, that the testatrix, by the terms of the second clause of her will, limited the site for the chapel to a place just beyond the "basin," and intended thereby to leave the selection of the particular site within the boundary on which to erect the chapel to the Cave Hill Cemetery Company, and further adjudged that the points "C" and plat "A" were each within the boundary fixed by testatrix in her will, and that a chapel erected at either of the points named or at any other point, which answered the description, "just beyond the basin," would conform to the intention of the testatrix, as expressed in her will. From this judgment, the heirs of testatrix have appealed.

It should be said, that in the decision of the question, which is presented on this appeal, the motives or purposes of the parties litigant, or the ulterior purposes of the heirs of testatrix can shed no light upon the controversy, nor can, in any way, be a determining factor, controlling the decision. The only question for decision is: Where, by the terms of the will of testatrix, did she intend that the proposed mortuary chapel should be erected? To ascertain the intention of the testatrix, to declare it and to require the carrying out of that intention, if possible, is the entire duty of the court. That the intention of a maker of a will shall control its construction is elementary, unless that intention is inconsistent with the established rules of law. If any other construction was permissible, the intention of the testator would prevail in the execution of few wills, since the opinions of mankind, as to what some other person should have done, or the best and most proper way to accomplish a purpose, are as various oftentimes

as there are different persons. Patrick v. Patrick, 135 Ky. 307; Citizens Trust Co. v. Fidelity Trust Co., 136 Ky. 540; Hegan v. Netherland, 141 Ky. 686; McFerran v. Fidelity Trust Co., 140 Ky. 536; Bayless v. Prescott, 79 Ky. 252; Anderson v. Hall, 80 Ky. 91; Thackston v. Watson, 84 Ky. 210; Buschmeyer v. Klein, 139 Ky. 124; Watkins v. Bennett, 170 Ky. 464. No rule of construction can be allowed to override the plain intention of the testatrix. The question often arises, as to how the intention of the testator is to be ascertained. When there are ambiguous terms or ambiguous clauses in a will, the motives, which can reasonably be supposed to have actuated the testator, the purpose of making the will, the relations between the testator and the devisees, and the nature and extent of the property may be called in to assist the language of the will in ascertaining the intentions of the testator. Henry v. Henry, 81 Ky. 342; Levy's Extx. v. Leeds, 151 Ky. 56; Watkins v. Bennett, *supra*. If the language of a will, when all of it is considered together, is plain and unambiguous, there is nothing to do except to give to it the meaning which its language clearly imports. If the language of a clause of a will is plain and is not clouded or made of uncertain meaning by other language of the will, it cannot be supposed that the testator meant or intended anything except what is said, and according to the ordinary meaning of the language used. The written language of a will is the best evidence of its meaning and the intention of the testator, and hence the intentions of the testator must be gathered from the language of the will itself, without the aid of extrinsic evidence, if it is unambiguous. Allen v. Van Meter, I. Met. 264; Mitchell v. Walker, 17 B. M. 61; Stephens v. Walker, 8 B. M. 600; Jackson v. Payne, 2 Met. 567. Further, where the intention of the testator is expressed in plain and unambiguous language, parol or other extrinsic evidence is not competent nor admissible to show that the testator had an intention different from that expressed in the will. Mudd v. Mullican, 12 S. W. 263, 385; 11 R. 417; Long v. Duvall, 6 B. M. 219; Tuttle v. Berryman, 94 Ky. 553. The clause of the will in controversy, in the instant case, does not upon its face show any ambiguity. It directs that $25,000.00 be set apart and appropriated to the erection of a mortuary chapel within the Cave Hill Cemetery. It directs that it be built in a

substantial, but artistic style of Gothic architecture. It provides for the inscriptions and the places at which the inscriptions shall be placed. It provides that the chapel shall be erected "in Cave Hill Cemetery just beyond the present basin, which is directly opposite to and in front of the gate of entrance to this cemetery and at the end of the avenue leading from the gate." The language, which is as follows: "which is directly opposite to and in front of the gate of entrance to this cemetery and at the end of the avenue leading from this gate," definitely fixes and designates the "basin" "just beyond" which, the chapel is to be erected. The words, "just beyond the present basin," clearly expresses the intention of the testatrix as to the site of the chapel, so far as she had an intention as to the proximity of the site of the chapel to the "basin." The word, "just," as used in the connection in which it stands, should be given its ordinary and familiar meaning. When used with reference to distance, it means barely, scarcely, closely, nearly. Webster's International Dictionary, p. 806. Hence, "just beyond" means, in its ordinary signification, barely beyond, scarcely beyond, closely beyond, beyond the "basin," but with the least practical space between it and the "basin." This language being plain, there is not any necessity of calling to its aid any extrinsic evidence to determine the meaning of the testatrix. It can have no meaning other than that the testatrix intended that the site of the chapel should be "just beyond the present basin." However, when it comes to applying the language of the will to the object to be operated upon—that is, the exact site upon which the testatrix intended that the chapel should be erected, it appears that the "basin" is two hundred and fourteen feet in diameter, and that there is thus that number of feet of ground "just beyond the basin," between the tangent lines, and it is insisted that the erection of the chapel, at any place, between the tangent lines, would fulfill the requirements of the will. Hence, it is insisted that there is a latent ambiguity in the will, as regards the exact site intended for the chapel. A latent ambiguity is one, which does not appear upon the face of the words used and it is not known to exist until the words are brought in contact with the collateral facts. 2 C. J. 1312. In other words, there does not appear any duplicity, indistinctness or uncertainty from

the words used, but appears when the words are applied to the subject which they describe. In Breckinridge v. Duncan, 2 A. K. M. 50, a latent ambiguity was defined to be a state of case "where the intention of the party is clearly expressed, and a doubt exists, not as to the intention, but as to the object to which the intention applies." When a latent ambiguity exists in a will, it is permissible to prove the declarations of the testator made at the time or about the time of the execution of the will for the purpose of identifying the objects or persons upon which it is intended that the will should operate, and the facts and circumstances, which surround the testator at the time of the making of the will, in order to explain the language of the will and to assist the court in determining his intentions. Tudor v. Terrell, 2 Dana 47; Thomas v. Scott, 72 S. W. 1129, 24 R. 2031; Mitchell v. Walker, *supra;* 40 Cyc. 1428, 1429, 1431. Where the language is plain and unambiguous, however, the parol declarations of the testator cannot be received, where they give the will a different meaning from that expressed. Hence, the testimony of Gen. Castleman, as to the declarations of the testatrix, so far as they may tend to prove that the testatrix did not intend that the chapel should be erected at a point immediately beyond the "basin," is incompetent and inadmissible. Neither is the testimony of John Stites competent as to declarations of the intentions of the testatrix, because the time of the making of the declarations is, too remote from the execution of the will to shed light upon its meaning, as regards the intention of the testatrix, as to the site of the proposed chapel. The evidence, however, which describes the topography of the cemetery is competent as assisting in the application of the language of the will to the object intended to be effected by it.

The evidence given by the civil engineer and landscape gardener shows beyond dispute, that there is a site suitable for the erection of a chapel "just beyond the present basin," to which the language and meaning of the will may be applied. The ground embraced in plat "A" is "just beyond the basin." It is a commanding location and visible from all parts of the cemetery. The motive of the testatrix in making the devise is gathered from the will itself. The purpose was to erect a testimonial to the memory of her husband and son,

which would be useful, as well as possessing striking artistic beauties, which would attract the admiration of all, and to keep alive the memories of the dead, to whom it was consecrated. In raised letters over the entrance and upon tablets behind the pulpit, the purpose and motive for the erection of the chapel should be declared. This motive expressed in the will is a fact bearing upon her intention as to the site of the chapel. Plat "A" possesses the natural characteristics to make it a suitable and proper place for such a monument, and has, also, the accessibility necessary to render it convenient to those desiring to use it for the funeral obsequies of the dead. Point "C" is, in a sense, beyond the "basin," but it cannot be said to be "just beyond" it. It is eighty feet from the rim of the "basin" to point "C," and the continuity of the ground between them is broken by a roadway, which is twenty feet in width, and a walkway and strip of ground fifteen feet in width between point "C" and the roadway. It is thirty-four feet to the north from a line drawn from the center of the entrance gate to the cemetery, and along the center of the avenue leading to the "basin," and on through the "basin" to a point at right angles to "C." At point "C" the earth falls away rapidly towards the north and, within a few feet, to a depth of ten or twelve feet below the level of the roadway. The territory between point "C" and the outer wall of the cemetery, toward the north, is a reserve, covered with trees. While the opinions of the civil engineer and landscape gardener of the Cemetery Company are, that point "C" is a more suitable site for a mortuary chapel than plat "A" is, for reasons of ornamentation and economy in construction, these opinions do not prove that the testatrix intended that point "C" should be the site of the chapel, as there is nothing to indicate that she knew of the potency of their reasons or had them in contemplation while making her selection of a site for the chapel. These same witnesses give it as their opinions, that plat "A" is not suitable for a mortuary chapel, because, as they say, there will not be space sufficient around the chapel, when erected, to allow the planting of trees and shrubs for proper ornamentation. The testatrix may, however, have entertained a different opinion, as such opinions are held in accordance with the tastes peculiar to different individuals, and the will is significantly si-

lent upon the necessity or desire for such ornamentation. It is insisted, that to erect the chapel upon plat "A" will necessitate the making of a road thirty feet in width along the eastern rim of the "basin," but this, if done, would still enable the chapel to be erected fifty feet nearer the "basin" than at "C." To erect the chapel "just beyond the basin," in the direction of point "C," would necessitate its erection in the roadway or the walkway, just beyond it, and this cannot be presumed to have been the intention of the testatrix; neither could she have contemplated the erection of it beyond the driveway and walkway and upon the steep bank in the wooded reserve; at least, it seems that it is very improbable, that she ever contemplated its location at such place, if effect is given to the necessary meaning of the language which she used in defining its intended location.

Hence, taking into consideration the motives of the testatrix for making the devise, as appears from the will; the language used by her in defining the site for the chapel; and the nature and situation of the grounds "just beyond the basin," it does not appear that there is any other ground for the site of the chapel to which the language of the will permits it to be applied, except that embraced in plat "A," and hence, we conclude that it was the intention of the testatrix that the chapel should be erected upon plat "A," and the erection of it at "C," or at any other point except upon plat "A," would not be a compliance with the requirements of the will.

The judgment is reversed and cause remanded for proceedings consistent with this opinion.