# Carey-Reed Company v. City of Marion.

(Decided October 18, 1929.)

TOWNSEND & PARK and C. S. NUNN for appellant.

JOHN W. BLUE, Jr., and JOHN A. MOORE for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

By this action appellant, who was the plaintiff below, seeks to reform a written contract on the ground of mutual mistake. There is no charge of fraud. On June 27, 1928, the board of council of the city of Marion passed an ordinance providing for the construction of a sanitary sewerage system, and on July 21, 1928, the plaintiff and defendant entered into a written contract for the construction of the sewerage system; plaintiff's bid having been accepted by the city as the lowest and best bid for the work. The section of the contract in controversy is the one providing for the payment of engineering fees and reads as follows:

"It is understood and agreed that the contractor will pay to the engineers the engineering fees and expenses, payments to be made in cash as follows:

"(a) Within ten days after the execution of the contract, a sum equal to three and one-half per centum (3½%) of the contract price; such contract price to be taken as the sum total obtained by multiplying the quantity of each item in the proposal and bid by the unit price for work under that item.

"(b) During the construction period, on or about the 10th of each month, a sum equal to two per

centum (2%) of the value of work done and materials furnished during the preceding month, as estimated by the engineers.

"Upon completion of the work, and determination of the final total contract price, the total payments under (a) and (b), above, shall be adjusted so as to equal five and one-half per centum (5½%) of the final total contract price.

"(c)   In addition to the sums named in (a) and (b) above, the contractor shall pay to the engineers each month, during the construction period, the sum of two hundred dollars ($200.00) for the salaries of inspectors employed by the city.  Should the salaries of such inspectors be less than the sum of two hundred dollars, the engineers will pay the unexpended balance to the city, to be placed to the credit of the improvement fund.  Such 'construction period' shall be  assumed to commence thirty days after the execution of the contract, and to continue until the entire work is inspected and approved.

"(d)   If the completion of the work is delayed, for any reason whatever, beyond the date for completion named in the contract, the contractor shall pay to the engineers the additional sum of three hundred dollars ($300.00) per month, from the contract date for completion, to the actual date of completion, to compensate the engineers for the additional expense to them of such delay.

"It is understood and agreed that all the above sums are included in the amounts to be paid to the contractor for work done, in accordance with the unit prices named in the proposal and bid; and the contractor shall not be entitled to any extra compensation on account of any or all of the above-named engineering fees and expenses."

It is plaintiff's contention that by mutual mistake of the parties the word "pay" was used in the first paragraph of the above section of the contract, instead of the word "advance," and that the contract as written failed to express the true intention of the parties, which was that the contractor should advance the engineering fees and expenses, for which it was to be reimbursed when the contract was completed, and which were not to be treated as a part of the cost of the work covered by plaintiff's bid, but in addition thereto, and were to be

assessed against the abutting property as a part of the total cost of the work. On the other hand, the city maintains that the written contract expresses the true intention of the parties, and that it was understood by them, at the time the contract was executed, that the engineering fees and expenses were included in the price bid for the work, and that the contractor was to receive no money from the abutting property owners of the city in excess of the unit prices bid.

George B. Carey, president of the appellant company, testified that at the time he made out the bid for plaintiff he did not understand that the engineering fees were to be included in the various unit prices for the construction work, but that it was his understanding that, inasmuch as the city of Marion had no funds available with which to pay the engineering fees, the contractor was to advance this item of cost as the work progressed, and that the abutting property would be assessed for the cost of the construction work at the various unit prices, plus whatever sums of money the contractor had advanced in engineering fees. In support of its claim that the mistake was mutual, and that defendant likewise understood that the engineering fees were merely to be advanced by the contractor, and not to be included in the bid price, a letter dated July 6, 1928, written to George B. Carey by Klyce & Harrub, city engineers, was introduced. This letter contained the following statement:

"It is the intention of the city to have the contractor finance the job complete, including engineering cost, until the job is finished and accepted. The city will then issue warrants against the property owners, or they may issue bonds and pay cash."

On October 2, 1928, Carey wrote a letter to the engineers, and mailed a copy of same to John A. Moore, chairman of the board of public works of the city of Marion. This letter contained the following paragraph:

"Referring to page xx-5 of our contract for both sewer and paving, we are not satisfied that the last paragraph of said page sets out the intention of the parties, and we are going to ask you to rewrite said paragraph, and make it read 'that any money advanced by the contractor for the engineer's expenses shall be refunded to him, by including said amount in the monthly estimates as a part of the

total cost of the work to be assessed to the abutting property.' "

In response to this letter Klyce & Harrub wrote the plaintiff as follows:

"With reference to page xx-5 of our contract for both sewers and paving, it appears to me rather late in the day for you to express dissatisfaction, inasmuch as that was explained to you thoroughly previous to your bidding. Before you submitted bids in July you wrote us, requesting an explanation of this particular part of the specification, which explanation was given you in our letter of July 5, 1928; it being stated therein that the bid price for the work should include the items of cost to the contractor for engineering service. You submitted your bid on the basis of this, and entered into contract with the city with the understanding that the bid price for the work should include these items, and we fail to understand now why you should request such a radical change in the contract, which would really mean added cost to the city to the extent of engineering fees. If any such change were made, it would be necessary to reduce the price bid on the various units listed sufficiently to reduce your financial return to the same amount as the engineering fees at the completion of the work. I would prefer to take this matter up with the board of public works before proceeding any further with it."

When John A. Moore, chairman of the board of public works of the city of Marion, received a copy of plaintiff's letter to the engineers, he wrote a letter to Klyce & Harrub in which he said:

"We see no objection to your writing into the contract the paragraph that the contractor is asking, as it has been understood from the first that any money advanced by contractor for the engineer's expenses would be charged to the property and refunded to the contractor. Any provision that makes that intention clear cannot be found objectionable; and if the contractor is in doubt about it being clear, there can be no harm in clearing up that point, as to both sewer and paving."

In his deposition Mr. Moore explained the above-quoted paragraph contained in his letter to Klyce & Har-

rub by stating that he was absent from the city when the contract between plaintiff and defendant was made, and had not seen the written contract. He testified in part as follows:

"I had not seen the contract between the city and Carey-Reed Company as to the sewers, and did not know the contents of it, but I assumed from Mr. Carey's letter that he had stated the facts, and upon that assumption, that it was the mere wording of the contract that did not change the meaning, and one that he merely wanted made clear, that there could be no misunderstanding about it, I wrote the letter to Klyce & Harrub, dated October 3d. I did not understand, from the letter of Carey-Reed Company, that it in any way changed the contract that they had entered into; in fact, I did not know what the contract was. I assumed the Carey-Reed letter had stated the facts about it."

Counsel for appellant concedes that there is a sharp contradiction in the testimony between the plaintiff and defendant as to whether or not there has been any mistake made between the parties with reference to the payment of engineering fees, but, conceding that it is a universally recognized rule that a court has no power to reform a contract on the ground of mistake, unless the mistake is mutual and supported by clear and convincing evidence, they insist that evidence of mutual mistake does not depend alone upon the statements of witnesses, but the character of testimony, the coherence of the entire case, documents, circumstances, and facts which are proved will be considered, and they rely on Irwin v. Westwood Realty & Development Co., 200 Ky. 760, 255 S. W. 546. The rule announced in the Irwin case, where the facts and circumstances warrant its application, is sound; but here the letters written by the engineers and by Mr. Moore, the chairman of the board of public works of the city, which are the chief documents relied on by plaintiff to show that it was the understanding of the defendant that the contractor was merely to advance the engineering fees, are satisfactorily explained by the writers of those letters, and the evidence is left in conflict as to whether or not any mistake had been made between the parties with reference to the payment of the engineering fees.

122

It is insisted that, since the contract does not specifically provide that the engineering fees shall be included in the unit prices bid, while there are such provisions as to other costs and expenses, it must be assumed the parties did not contemplate that the lump price bid should include the engineering fees. The difficulty in such an interpretation of the contract, based on an analysis of the contract itself, is that numerous items of cost and expense, such.as interest, insurance premiums, overhead expense, etc., concededly must be absorbed in the unit prices, although the contract does not so specifically provide.

The city officials claim that the contract as written expresses the true intention of the parties, while the defendant claims it does not embrace the terms agreed upon. Considering all the evidence, we are of the opinion that the judgment of the lower court refusing to reform the contract was correct. The rule, that, to reform a contract on the ground of mistake, the evidence must be clear and convincing, or such as to establish the mistake beyond reasonable controversy, is too firmly settled to require the citation of authorties. The evidence here does not measure up to the requirements of this rule. It was incumbent upon the plaintiff to show by conclusive proof that the contract does not embody the true intention of the parties. This it failed to do.

Judgment affirmed.