## Edgewater Coal Co. v. Swinney et al.

## Bartley et al. v. Edgewater Coal Co.

(Decided Dec. 5, 1933.)

HARMAN, FRANCIS & HOBSON for appellant Edgewater Coal Co.

E. J. PICKLESIMER for appellees Arminda Swinney, Polly Bartley, and Jesse Bartley.

OPINION OF THE COURT BY JUDGE CLAY—Affirming in part and reversing in part.

In 1887, Jesse and Polly Bartley conveyed to the Virginia Mining & Improvement Company a portion of their home farm. On November 20, 1916, they entered into a contract by which they sold all the coal and other

minerals on the entire farm to Lon Rogers at a price of $40 per acre. Both Jesse Bartley and his wife, Polly Bartley, were named as parties of the first part. In addition to providing that one-half the purchase price should be paid to Polly Bartley, the contract contained the following provision:

"Said land was acquired by first parties as follows: This mineral was bequeathed by and purchased for Samuel Fields, and a portion I have had patented by the Commonwealth of Kentucky."

On December 2, 1916, Lon Rogers assigned the contract to the Edgewater Coal Company. Pursuant to the contract the Bartleys, on May 18, 1917, conveyed to the Edgewater Coal Company all the coal and other minerals underlying the entire farm, which contained 354.6 acres. In addition to $100 paid by Lon Rogers on the execution of the contract, $5,642 was paid to Polly Bartley, and the same amount paid to Jesse Bartley. A balance of $2,800 was deposited in the Pikeville National Bank until Jesse Bartley obtained a patent on part of the farm. On July 14, 1917, $1,400 of this sum was deposited to the credit of Polly Bartley, and $1,400 was deposited to the credit of Jesse Bartley.

On June 28, 1927, the Big Sandy Company brought suit against the Edgewater Coal Company to recover certain strips of mineral around the top of the ridge in the head of Dry fork. On July 11, 1927, the Big Sandy Company filed an amended petition setting up title to the land which Jesse and Polly Bartley had conveyed to the Virgina Mining & Improvement Company in the year 1887. This pleading, which was lost, was substituted and refiled on November 27, 1928. The Edgewater Coal Company denied title of the Big Sandy Company and made its answer a cross-petition against Jesse and Polly Bartley. The court sustained a demurrer to the cross-petition on the ground that it was prematurely brought, but the order provided that it was without prejudice to a proper action. The Bartleys employed counsel to represent them in the action, and after Jesse Bartley, his two sons, and others had given their depositions, the Bartleys, on September 21, 1928, conveyed to their three sons, James, Mann, and Butler, 293 acres of land, to Jettie Potter, their granddaughter, and her husband, W. L. Potter, 60 acres, and to their daughter, Arminda Swinney, 300 acres. These tracts

were all portions of the farm formerly belonging to Al Swinney, and purchased by Polly Bartley on May 7, 1923. On final hearing the Big Sandy Company recovered of the Edgewater Coal Company 151.57 acres of the tract, which had been conveyed by the Bartleys to the Edgewater Coal Company.

Thereafter the Edgewater Coal Company brought this suit against Jesse Bartley and his wife, Polly Bartley, and against the grantees in the foregoing deeds, to recover the value of the acreage which had been conveyed to them by the Bartleys with covenant of general warranty, and had been lost to the Big Sandy Company and to set aside the deeds of September 21, 1928, on the ground that they were made without consideration, and with the fraudulent intent to cheat, hinder, and defraud their creditors, particularly the plaintiff. After hearing the evidence, the chancellor rendered judgment in favor of the Edgewater Coal Company and against Jesse Bartley and Polly Bartley for the sum of $6,-062.80, with interest from May 18, 1917, until paid, and costs amounting to $65.30. He also set aside the deed to James, Mann, and Butler Bartley, but refused to set aside the deed to the Potters and the deed to Arminda Swinney. With the exception of the Potters, against whom no relief is asked, all the parties have prosecuted an appeal or a cross-appeal from that portion of the judgment unfavorable to them.

The first question to be determined is whether Polly and Jesse Bartley are liable on their warranty, and if so the extent of Polly Bartley's liability. It was pleaded, and there was an attempt to prove, that at the time the conveyance was made a representative of the Edgewater Coal Company stated that the company was buying only the minerals that the grantors had, that the grantors could not read and write, and signed the deed believing that it contained no warranty of title, and that the covenant of warranty in the deed was inserted by fraud or mutual mistake. To justify the reformation of an executed contract on the ground of fraud or mutual mistake, the evidence must be clear and convincing, or such as to establish fraud or mistake beyond reasonable controversy. Dark Tobacco Growers' Co-operative Ass'n v. Ray, 215 Ky. 373, 285 S. W. 198; Carey-Reed Co. v. City of Marion, 231 Ky. 117, 21 S. W. (2d) 145. We have carefully considered the evi-

534

dence tending to show fraud or mutual mistake, and have reached the conclusion that it does not come up to the required standard. It follows that the chancellor did not err in so adjudging.

The deed in question contains the following provision: "Polly Bartley, wife of Jesse Bartley, joins herein for the purpose of and does hereby release and convey her expectant dower estate and all interest in the property herein conveyed." It is argued that this provision shows very clearly that Polly Bartley's sole purpose was to release her dower in the land, and that being true the covenant of general warranty was not binding on her. It must not be overlooked that Polly Bartley herself not only had a potential right of dower in that portion of the land belonging to her husband, but also owned an interest in the land itself, and that she joined in the deed both for the purpose of releasing her dower, and for the purpose of conveying "all interest in the property herein conveyed." In the circumstances Jesse Bartley, her husband, is liable on the warranty as to all the land, and while Polly Bartley is not liable on her husband's warranty as to his interest in the land, she is liable on her own warranty to the extent of the interest which she claimed to own and attempted to convey. Section 2127, Kentucky Statutes; Crawford v. Baker, 235 Ky. 784, 32 S. W. (2d) 340.

It is difficult to determine from the record the precise interest that each of the grantors had in the land. It is true that Jesse Bartley testified that he owned the land and bought it from old man Fields, that his wife was one of the Fields' heirs, that Fields gave her a piece of the land, and he himself ran out some of it and bought the rest of it. But the original contract of sale contained the following provision:

"Said land was acquired by first parties as follows: This mineral was bequeathed by and purchased for Samuel Fields, and a portion I have had patented by the Commonwealth of Kentucky."

And the deed contains the following provision:

"The source of title to the above described property is deed from Daniels Coleman and wife, dated August 22nd, 1887, and recorded in Deed Book 3, page 374, and by inheritance from Samuel Fields and patents to Jesse Bartley."

In the original contract between the Bartleys and Lon Rogers, it was provided that one-half the purchase price should be paid to Polly Bartley. While it doubtless is true that a portion of the land was bought either from Samuel Fields or his heirs, no deeds from him or them appear of record, and it is evident that the greater portion of the land was acquired by adverse possession. In the absence of clearer evidence as to how much of the land each of the grantors owned, we are inclined to give controlling weight to the conduct of the grantors who provided that the purchase price of the minerals should be shared equally, and thereby treated and regarded themselves as equal owners of the land. We therefore conclude that Polly Bartley was liable to the extent of one-half the sum adjudged against her and her husband, and that it was error to render a joint judgment against both of them for the whole amount.

We shall now consider the correctness of that part of the judgment setting aside the deed to James, Mann, and Butler Bartley, and refusing to set aside the deed to Arminda Swinney. These deeds, together with deeds to other children, were all made on September 21, 1928. At that time the suit between the Big Sandy Company and the Edgewater Coal Company to recover a portion of the coal and minerals in the Bartley tract was pending, and Jesse Bartley had employed counsel to assist in the defense of the suit. On July 6, 1928, Jesse Bartley and his two sons, James and Mann, gave their depositions. In the month of June and July just preceding the execution of the deeds, Polly and Jesse Bartley came to the Bank of Hellier and withdrew about $6,000 in cash. According to the cashier, Mr. Bartley explained that it was not due to any dissatisfaction with the bank, but was due to the suit he had with the Edgewater Coal Company. This is denied by the Bartleys, who claim that the money was withdrawn because they had heard rumors about the bank. The matter was impressed on the mind of the cashier by the fact that he had to telephone one of their correspondents at Pikeville in order to get the money. Mrs. Bartley did not testify that any money was paid by the grantees at the time of the execution of the deeds, but the other Bartleys testified that each of the three boys paid $500, that Jettie Potter paid $1,000, and Arminda Swinney paid

$500, and all of these payments were in cash. Grant Coleman, who took the acknowledgment of the deeds, testified that each one of the grantees paid $500 in cash in new $20 bills. There is no evidence as to how it happened that each of the grantees had so much money in new $20 bills. Jesse Bartley declined to tell what they did with the money which they got for the land, except to say that as to the $1,500 of the amount, they ate it up, wore it out, and had a few dollars of it left. In view of this evidence we see no reason to disturb the finding of the chancellor. The deed was made during the pendency of the suit brought by the Big Sandy Company against the Edgewater Coal Company, and at a time when it was apparent that the Edgewater Coal Company would lose and the Bartleys would become responsible for the loss. Just prior thereto the Bartleys withdrew $6,000 from the bank. It is apparent that the foregoing circumstances fully sustain the finding of the chancellor that the Bartleys were not only disposing of their other property, but made the deed in question with the fraudulent intent to defeat the claim of the Edgewater Coal Company. If it had been made to appear that the three boys were bona fide purchasers for value without notice, a different question would be presented; but as said before, there is no reasonable explanation of how the boys happened to have on hand the sum of $500 each in new $20 bills, unless the money was furnished by Polly and Jesse Bartley out of the money which they had previously withdrawn from the bank in order to give the transaction the appearance of good faith.

With respect to the deed which the Bartleys executed to their daughter, Arminda Swinney, along with the other deeds of September 21, 1928, the facts are these: K. B. Elswick was the owner of a tract of land containing about 571 acres, located on Grassy creek in Pike county, which he conveyed to Al Swinney, husband of Arminda Swinney, in the year 1918. The consideration was $11,175 paid and to be paid. Of this Al Swinney paid $7,658.36, leaving a balance of $3,516.64. Al Swinney being in default, Elswick brought suit to enforce his lien. He obtained a judgment for the purchase price less the credits thereon, and the land was ordered sold. As a matter of fact the land was not sold at a commissioner's sale, but the Swinneys arranged with Polly Bartley to pay the balance due,

amounting with interest to about $5,000, and at the same time conveyed the land to Polly Bartley. This is shown not only by the evidence of Elswick and Arminda Swinney, but the deeds which the Bartleys executed to Arminda Swinney and the other children recite that the particular contract conveyed to each was "a part of the same land conveyed to the first parties by Al Swinney and Arminda Swinney by deed bearing date May 7, 1923, which is duly recorded in Deed Book 119, page 119, County Court Clerk's Office." In support of her claim as to the arrangement between her and her mother, Arminda Swinney gave the following testimony:

"Q. How much had you paid on it? A. We had paid $9,000.00.

"Q. And you still owed some on it? A. Yes, sir, we did.

"Q. Did you make any arrangements with your mother about paying for the rest of it? A. Yes, sir.

"Q. Tell about it. A. I come on Friday and asked my mother if she would pay off the remainder and redeem the home for me and she went down to Pike with me and paid it off and she was to deed me back a piece of it for what we had paid on it.

"Q. Now later on did you and her agree and divide the land or was there an agreement made and part of the land deeded back to you? A. Yes, sir, she deeded back part of it to me.

"Q. Now at the time this land was deeded back to you did you pay her anything? A. Yes, sir.

"Q. How much? A. $500.00.

"Q. And you and she agreed that she would deed it back to you, when she bid it in? A. Yes, sir."

Polly Bartley's account of the transaction is as follows:

"Q. Now Mrs. Bartley, some years ago did you have a land transaction about the land on Grassy Creek that Al Swinney had bought up there. I mean did you pay some money on some land he bought. A. Yes, sir, finished paying for the tract.

"Q. Tell just how you come to finish paying for this? A. Al had paid out all he had and said he had no more to pay and Jim Elswick was going to get the land back and if someone didn't redeem it they would lose their home. And Arminda come and got me to go to Pike and redeem it for her.

"Q. As I understand, it was to sell the next Monday? A. Yes, sir, and she come on Monday and me and Arminda and Al and Jess, my husband, I believe, went down there, and I paid it off.

"Q. Did you have any agreement with your daughter Arminda about this before you paid this off, whether she was to have any of her land back? A. She said, Mother I had rather give it to you and pap as to let them have it, and I said, you know if I take it you will get your part back.

"Q. Later on did you make a deed to Arminda for a part of this land? A. Yes, to a part of it. We made them a deed for what we thought they ought to have for what they had paid on it and we held back the rest of it.

"Q. And you kept back what you thought would pay you for what you had paid on it? A. Yes, sir.

"Q. What did you do with the land you kept back? A. Deeded it to the three boys."

It will be observed that the agreement relied on was that Mrs. Bartley was to pay the balance due on the land and deed to her daughter, Arminda Swinney, her part of the land in consideration of what she had paid on it. If such an agreement was actually made, it is strange that Arminda Swinney and her husband actually conveyed all the land to her mother without deducting her part, or that the mother did not reconvey to Arminda Swinney her part of the land, but waited until five years later when it became apparent that she and her husband would be liable on the warranty to carry the agreement into effect. But aside from all this, the facts relied on are not sufficient to show a trust. It is true that where one buys land at a judicial sale under a parol agreement to purchase for another, and fails to convey in accordance with the agreement, a resulting trust will arise where the party with whom the

agreement is made furnished the purchase money or had an actual interest in or bona fide claim to the land purchased. Doom v. Brown, 171 Ky. 469, 188 S. W. 475. But, as before stated, the land in question was not sold at a judicial sale, and the rule does not apply. On the contrary, the case is one where Arminda Swinney and her husband actually conveyed the land to her mother, and it is sought to sustain a parol contract by which the mother agreed to reconvey her a portion of the land for what she and her husband had paid on it. Clearly such an agreement was not enforceable, Doom v. Brown, supra, and no trust arose that as against creditors would support a voluntary conveyance made five years later, when it was apparent that the grantors would be called upon to make good their warranty. It is true that Jesse Bartley testified that Arminda Swinney paid $500 on the purchase price at the time his wife made the purchase, but this evidence is wholly inconsistent with Arminda Swinney's claim that she was to be deeded her part of the land for what she had paid on it, and also with the deed which she and her husband executed to her mother. We are also constrained to the view that the $500 alleged to have been paid when the deed of September 21, 1928, was executed, is in the same category as the $500 payments alleged to have been made by the other children, and was not a payment in good faith. For these reasons we have reached the conclusion that the deed to Arminda Swinney was made by the grantors with the fraudulent intent to defeat the claims of creditors, including that of the Edgewater Coal Company.

On the appeal of the Edgewater Coal Company against Arminda Swinney, the judgment is reversed, and cause remanded with directions to set aside the deed to Arminda Swinney. On the appeal of James, Mann, and Butler Bartley, the judgment is affirmed. On the original appeal, and on the cross-appeal of Jesse Bartley, the judgment is affirmed. On the original appeal and on the cross-appeal of Polly Bartley, the judgment is affirmed in all respects, except in so far as it awarded a recovery against Polly Bartley for $6,062.80, with interest from May 18, 1917, until paid, and the cause remanded, with directions to enter judgment against her for only one-half that sum. Jesse Bartley, Polly Bartley, and James, Mann, and Butler Bartley

will pay all costs, with the exception of one-fifth thereof, which will be paid by the Edgewater Coal Company.

Whole court sitting.