**Edna HUFFMAN et al., Appellants,**

v.

**Lottie Clay Huffman PAYNE, Appellee.**

Court of Appeals of Kentucky.

Feb. 15, 1957.

Rehearing Denied May 3, 1957.

Harry B. Miller, Lexington, for appellant.

C. X. Johnson, Lexington, for appellee.

CLAY, Commissioner.

This suit originated as an action by the executrix of the estate of Joseph L. Huffman to sell real estate to pay debts. Appellant Edna Huffman filed a counter and a cross-claim seeking to reform the joint will executed by her and her husband, Joseph. The Chancellor denied her the relief sought.

The joint will of Joseph and his wife Edna was drawn by an attorney. After making two bequests of $500, it provided in Item 4 that the survivor should have all personal property "absolutely and in fee simple".

The pertinent part of Item 5 provided as follows:

"We give and devise to the survivor of us, any and all interest of every kind that we may have in any real property, for and during the natural life of the survivor * * *."

A subsequent provision of Item 5 was that the balance of the real estate and personal property was bequeathed and devised to the executrix at the death of the survivor, with full power to sell and convey any property "left at the death of the survivor" for the purpose of dividing the proceeds among named beneficiaries.

It is appellant's contention that it was the intention of the parties to the will to leave each other a fee in the real estate, or at least a right to encroach upon the corpus, rather than a life estate as specifically created by the will.

It was shown that Mr. and Mrs. Huffman were a devoted couple and that at the time the joint will was executed he was suffering from a serious physical disability and she was preparing to undergo a serious operation. Uncontradicted evidence was introduced by appellant to show that after the making of the will Mr. Huffman stated that his property would go to his wife and her property would go to him. There was further testimony that Mr. Huffman had said that Mrs. Huffman could sell the property if it became necessary for living expenses. There was further evidence he had mentioned the possibility the parties might need to use up their entire properties for their support, but this line of testimony apparently related to the time when both were living, not after his decease.

We will assume, as did the Chancellor, that a joint will, as a contract, may under special circumstances be reformed for mutual mistake. However, reformation is permissible only if such mistake is proven beyond a reasonable controversy by clear and convincing evidence. Edgewater Coal Co. v. Swinney, 251 Ky. 531, 65 S.W.2d 674; McNabb v. South Eastern Gas Co. of West Virginia, 268 Ky. 532, 105 S.W.2d 622. In proving such mistake it should be shown that the parties had actually agreed to a disposition of the property different from that clearly expressed in the instrument. See Wheeler v. Keeton, Ky., 262 S.W.2d 465. The record shows no such agreement.

This will appears to have been carefully drafted by a competent lawyer. Appellant was bequeathed the personal property "absolutely and in fee simple". In the next sentence she was devised the real property "for and during the natural life of the survivor". On its face the will shows a clear recognition of the different character of the two estates created.

If a mistake was made, it must be shown to be mutual, and this requires us to examine the evidence of Mr. Huffman's alleged intentions. The proof with respect to such intentions in indefinite. A substantial portion of it relates to the possible disposition of the properties of both husband and wife while they both were living. A reference to the possible right of Mrs. Huffman to dispose of "the property" for living expenses after Mr. Huffman's death could have reference to the personal property rather than the real estate.

As further proof of a mistake, appellant points to the provision of Item 5 which gives the executrix the power to sell any property "left" at the death of the survivor. The argument is made that this could mean real estate which had not been consumed by the survivor. While we are really getting into a question of construction rather than a question of mistake, it does not appear to us that this language created any ambiguity or uncertainty. The word "left" in the will had no relationship to the life estate created. It was a residual expression referring to the executrix' power to sell. It obviously contemplated such property as remained after the death of both Mr. and Mrs. Huffman, taking into consideration the fact that a substantial portion of the property owned at the time of the making of the will might be consumed while both were living, that some of it would be used to pay legacies, and some to pay the debts of each party at the time of his death. The cases cited which involve the right to encroach upon the corpus by the life tenant are ones construing language which modified the apparent life estate granted and created an ambiguity on the face of the will. We have no such ambiguity here.

As stated by the trial judge in an excellent opinion:

"It is not the province of the court to write a new and different will for a man under the guise of construing or reforming a will made by him. The clearer the will appears upon the face of the writing the stronger and more convincing must be the testimony to give it a meaning different from that expressed by its words or to justify a reformation."

The written will of a testator is his last word on the disposition of his property. When his lips are sealed, the courts must be very careful not to make a redistribution of his property on the basis of parol proof that he had a different intention from that expressed, or because it would be more beneficial to one of the objects of his bounty if a different disposition was made. Assuming that all the evidence introduced in this action was competent and relevant, it falls far short of having that decisive character necessary to establish a mistake upon the part of the testator, and consequently there was no mutual mistake.

The judgment is affirmed.

CAMMACK, J., not sitting.