RENDERED: JUNE 27, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0610-MR

DAVID BARTLESON DRAKE,
INDIVIDUALLY AND AS
EXECUTOR OF THE ESTATE OF
ESTELLE B. DRAKE, DECEASED                          APPELLANT

v.          APPEAL FROM HENDERSON CIRCUIT COURT
            HONORABLE KAREN LYNN WILSON, JUDGE
            ACTION NO. 23-CI-00343

DEBBY DRAKE WILSON                                  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, CETRULO, AND A. JONES, JUDGES.

JONES, A., JUDGE:  David Bartleson Drake appeals from an order of the

Henderson Circuit Court that granted summary judgment to his sibling, Debby

Drake Wilson, in this declaratory judgment action concerning the Last Will and

Testament of their deceased mother, Estelle B. Drake.  Upon careful review, we affirm.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The record before us shows that, in the summer of 2022, Estelle took steps to get her affairs in order.  She contacted Independence Bank regarding her various accounts, including the Agency Account at issue in this action.  She also contacted an attorney to revise her Last Will and Testament, previously executed in 2018.  Estelle passed away on November 3, 2022.  The 2022 Will was admitted into probate in the Henderson District Court.  It is undisputed that, at some point prior to the execution of the 2018 Will, Estelle deeded her home to Debby.  It is also undisputed that the 2018 Will contained a specific provision that David would receive the value of the home "off the top" of the Agency Account as an offset and the remainder would be divided equally between Debby and David.  However, the 2022 Will contained the following provision:

### Item III

> During my lifetime, I executed a Deed in favor of my daughter, DEBBY DRAKE WILSON, whereby I conveyed to her [my] residence at 2020 Brookstone Drive, Henderson, Kentucky, and retained a life estate. In light of my previously executing said Deed in favor of my daughter, DEBBY DRAKE WILSON, I have provided for my son, DAVID BARTLESON DRAKE, through the survivorship provisions of my investment

account at Independence Bank (ending in 0755),[1] in consideration of my daughter, DEBBY DRAKE WILSON, receiving my residence.

Nevertheless, the record before us shows that the Agency Agreement with Independence Bank had not been updated since signed by Estelle in 2014. It contains the following provision: "8. Death of Principal. Upon my death, this Agreement shall terminate and Agent shall distribute the property held hereunder to the personal representative of my estate, after deducting any fees currently due Agent." In other words, the Agency Agreement directed the account be distributed to Estelle's estate, with no specific proportion to David. Under the residuary clause of her Last Will and Testament, Estelle directed that

**Item V**

All of the rest, residue and remainder of my estate, personal, real and mixed, of whatsoever, nature and wheresoever situate, including furniture, cash accounts, savings accounts, or any personal property acquired by me both before and after execution of this my Will, I give, devise, bequeath to my children, DEBBY DRAKE WILSON and DAVID BARTLESON DRAKE, equally.

David filed the underlying declaratory judgment action in the Henderson Circuit Court. In his petition, David requested the circuit court interpret Item III of Estelle's Will as directing that the entirety of the Agency Agreement funds be distributed to him, rather than divided equally between David

---

[1] The account ending in 0755 is the Agency Account.

and Debby. Discovery ensued, including depositions of the attorney who drafted the 2022 Will and an employee of Independence Bank who worked with Estelle in 2022. Debby filed a motion for summary judgment, which the circuit court granted. This appeal followed.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rule of Civil Procedure (CR) 56.03. The movant bears the initial burden of demonstrating that there is no genuine issue of material fact in dispute. The party opposing the motion then has the burden to present, "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991). When a circuit court grants a motion for summary judgment, the standard of review for the appellate court is *de novo* because only legal issues are involved. *Hallahan v. The Courier Journal*, 138 S.W.3d 699, 705 (Ky. App. 2004). We must consider the evidence of record in the light most favorable to the non-movant (*i.e.*, David) and determine whether the circuit court correctly found there was no genuine issue as

-4-

to any material fact and that the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 780 (Ky. App. 1996).

Finally, the construction, meaning, and legal effect of a written will is also reviewed *de novo. Combs v. Napier*, 706 S.W.3d 161, 165 (Ky. 2024).

### III. ANALYSIS

David raises two related arguments on appeal. He contends the circuit court erred in granting summary judgment because there are inferences that can be drawn from the evidence on which he could have prevailed, including that Estelle intended to devise the entirety of the Agency Agreement to him, rather than an equal division between the siblings.

Kentucky law is well-settled regarding the intent of the deceased when it comes to interpretation of a will:

> A testatrix's intent controls the interpretation of her will. *Clarke v. Kirk*, 795 S.W.2d 936, 938 (Ky. 1990). To ascertain the testatrix's intention, we first "examine the language of the instrument. If the language used is a reasonably clear expression of intent, then the inquiry need go no further." *Id.* (citing *Gatewood v. Pickett*, 314 Ky. 125, 234 S.W.2d 489 (1950)). While canons of construction are available when that intent is unclear, a court need not resort to canons of construction when a testatrix uses clear and unambiguous language. *Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010).

*Combs*, 706 S.W.3d at 164-65.

However, in ascertaining intent, courts must also be cognizant of the fact that, because the deceased's

> lips are sealed, the courts must be very careful not to make a redistribution of his property on the basis of parol proof that he had a different intention from that expressed, or because it would be more beneficial to one of the objects of his bounty if a different disposition was made.

*Huffman v. Payne*, 300 S.W.2d 785, 787 (Ky. 1957).

We must first look to the will itself to determine Estelle's intent. To that end, "[w]e have many times written that in arriving at the intention of testator in construing wills the question in each case is not, [w]hat did testator mean or intend to say? but, [w]hat is meant by what he said?" *Reno's Ex'r v. Luckett*, 298 S.W.2d 674, 676 (Ky. 1956) (internal quotation marks and citation omitted). That being said, "proof of the testatrix's situation is permissibly introduced to understand her intention from the language which she in fact used." *Combs*, 706 S.W.3d at 165 n.3 (citation omitted).

David argues that Item III presents a latent ambiguity. "A latent ambiguity is one which does not appear upon the face of the words used, and it is not known to exist until the words are brought in contact with the collateral facts." *Carroll v. Cave Hill Cemetery Co.*, 189 S.W. 186, 190 (Ky. 1916) (citation omitted). An example of a latent ambiguity is when the description contained in the will could apply to more than one person or more than one piece of property.

*Jennings v. Jennings*, 187 S.W.2d 459, 462 (Ky. 1945). We do not agree that Item III contains a latent ambiguity because, as the circuit court found, Item III does not devise any particular property to any particular person. At best, it acts as a notice. The Agency Agreement itself also does not devise the entirety of the account to David. The deposition of Independence Bank employee Kara Hudnall indicates that in late June or early July 2022, Estelle did update an IRA account, dividing it 85% to David and 15% to Debby upon her death. However, it is undisputed that Estelle did not update the survivorship clause in the Agency Agreement. The attorney who drafted the 2022 Will testified that an initial draft contained essentially the same provision as Item III in the 2018 Will, but Estelle approved the change in language that ultimately appeared as Item III in the 2022 Will. She also indicated that Estelle had been to the bank prior to making revisions to her Will, and the attorney was unaware that the Agency Account had no beneficiaries named when she drafted the Will.

The plain language of Estelle's Last Will and Testament does indicate that she intended to provide for both David and Debby. However, if she intended for David to have a larger portion of the Agency Account for *any* reason, she could have changed the survivorship provision in the Account Agreement or included a specific provision in the Will that directed more funds be distributed to David, similar to her 2018 Will. Estelle did neither of those things. We agree that the

-7-

wording of Item III could be more concise, and is also superfluous, but because it does not actually devise any property, it is of little matter. Accordingly, we agree with the circuit court that the Agency Account is to be divided equally pursuant to Item V of the probated Will. There is simply no evidence contained within the Will of Estelle's intent to leave the entire Agency Account to David; nor is there a latent ambiguity. We also understand that David believes Estelle should have divided her estate in a certain way. However, "the opinions of mankind as to what some other person should have done, or the best and most proper way to accomplish a purpose, are as various oftentimes as there are different persons." *Carroll*, 189 S.W. at 189 (citations omitted).

## IV. CONCLUSION

For the foregoing reasons, the order of the Henderson Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Harry L. Mathison
Henderson, Kentucky

BRIEF FOR APPELLEE:

Charles Edward Clem
Henderson, Kentucky